GOBIERNO MUNICIPAL AUTÓNOMO DE PONCE, demandante y recurrido, *v.* MIGUEL CARABALLO TORRES y OTROS, demandados y peticionarios.

*Números:* CC-2002-443
 CC-2002-445     *Resueltos:* 13 de enero de 2006

*Roberto J. Sánchez Ramos*, procurador general, y *Laura Liz López Roche*, procuradora general auxiliar, abogados de la parte recurrida; *Donato Rivera De Jesús* y *Silvia Rico Medina*, abogados de la parte peticionaria.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El Municipio Autónomo de Ponce (Municipio) presentó una demanda y solicitud de *injunction* ante el Tribunal de Primera Instancia, Sala Superior de Ponce, contra Miguel Caraballo Torres, su esposa, la Sociedad Legal de Gananciales compuesta por ambos, Allied Outdoor Advertising, Inc. y Cingular Wireless. En la referida demanda alegó que los codemandados habían instalado un rótulo sin la previa obtención de permisos de la Oficina de Permisos del Municipio de Ponce, según ordenado por la Ley Núm. 81 de 30 de agosto de 1991, mejor conocida como la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos), 21 L.P.R.A. sec. 4051 *et seq.*[1] Señaló que, en virtud de la Ley Núm. 81, ante, se suscribió el Convenio de Transferencia de Competencias de la Junta de Planificación de Puerto Rico y la Administración de Reglamentos y Permisos (Convenio de Transferencia) entre el Gobierno central y el Municipio, y que mediante éste se transfirieron las competencias en materia de rótulos y la jurisdicción para intervenir a la Oficina de Permisos del Municipio Autónomo de Ponce.[2]

En específico, el Municipio arguyó que el rótulo violaba las disposiciones de su Reglamento de Ordenación al no guardar el tamaño debido ni seguir el patrón predominante en el sector, que no contaba con la autorización de la

---

[1] Miguel Caraballo Torres y su esposa son propietarios del local donde ubica el rótulo; Allied Outdoor Advertising, Inc. es la propietaria del rótulo, y Cingular Wireless es la compañía anunciada en el referido rótulo.

[2] El Municipio Autónomo de Ponce (Municipio) también presentó una querella ante su Oficina de Permisos por la instalación del referido rótulo.

Autoridad de Carreteras y Transportación ni con la certificación de un ingeniero o arquitecto colegiado. En vista de ello, el Municipio solicitó que se le ordenara a los codemandados remover el rótulo de forma inmediata, abstenerse de instalar rótulos sin los permisos del Municipio y una compensación de no menos de mil dólares en concepto de honorarios de abogado.

Los codemandados presentaron una moción de desestimación. En la moción alegaron que el foro primario no tenía jurisdicción sobre la materia objeto del pleito. Ello debido a que, en virtud de la Ley Núm. 355 de 22 de diciembre de 1999, conocida como Ley Uniforme de Rótulos y Anuncios de Puerto Rico de 1999 (Ley Uniforme de Rótulos y Anuncios), 9 L.P.R.A. sec. 51 *et seq.*, era la Administración de Reglamentos y Permisos (A.R.Pe.) quien tenía la facultad para emitir los permisos para la instalación de rótulos, y no el Municipio. Sostuvieron, además, *que la Ley Núm. 355, ante, tuvo el efecto de derogar aquellas disposiciones de la Ley Núm. 81, ante, que autorizaban al Municipio a suscribir los convenios de transferencia con el Gobierno central para solicitar las facultades para emitir permisos para la instalación y exhibición de rótulos y anuncios.* Además de lo anterior, los codemandados alegaron que, previo a la instalación del rótulo en cuestión, ya estaba vigente la Ley Núm. 355, ante, y *se habían obtenido los permisos correspondientes en A.R.Pe.* Posteriormente, el Municipio enmendó la demanda para incluir como demandada a la mencionada agencia.

Luego de un estudio de las mencionadas disposiciones estatutarias, el foro primario determinó que la ley que regía la controversia era la *Ley Núm. 355*, ante, y que *de ella surgía que era A.R.Pe. quien tenía la facultad de expedir el permiso para la instalación del rótulo en cuestión*; razón por la cual, el mencionado foro determinó que *A.R.Pe.* tenía jurisdicción primaria para atender las controversias sobre las alegadas violaciones señaladas por el Municipio. Por

consiguiente, el foro primario dictó sentencia para *desestimar* la demanda por falta de jurisdicción.

Inconforme, el Municipio acudió al Tribunal de Apelaciones mediante un recurso de apelación. El foro apelativo intermedio señaló que la controversia se circunscribía a establecer el efecto que tuvo la aprobación de la Ley Núm. 355, ante, en la eficacia del Convenio de Transferencia suscrito entre el Municipio y el Gobierno central. *Determinó el referido foro que no había controversia en cuanto a que la intención clara y específica del legislador, al aprobar la Ley Núm. 355, ante, era uniformar las normas que regulaban la concesión de permisos en la industria de rótulos y anuncios.* Ello, no obstante, el foro apelativo consideró que el lenguaje del referido estatuto aplicaba, *únicamente*, a aquellos municipios que no hubiesen suscrito un Convenio de Transferencia con el Gobierno central y que, en cuanto a estos municipios, le correspondía a A.R.Pe. conceder los permisos de rótulos y anuncios.

En cuanto al Municipio, *el cual sí había suscrito el referido convenio*, el foro apelativo intermedio determinó que la Ley Núm. 355, ante, *no* podía tener el efecto de derogar tácitamente sus disposiciones e incidir directamente con las jerarquías que le concedió el Municipio. Por ello, concluyó que, en virtud del Convenio de Transferencia, la Oficina de Permisos del Municipio Autónomo de Ponce era la entidad con competencia para otorgar el permiso de instalación del rótulo en cuestión. En vista de que una de las alegaciones del Municipio era que el referido rótulo no contaba con los permisos correspondientes, el foro apelativo determinó que el tribunal de instancia tenía jurisdicción para atender la controversia en el presente caso. Por consiguiente, procedió a dictar sentencia para revocar la emitida por el foro primario.

Inconformes con esta determinación, Allied Outdoor Advertising Inc., Miguel Caraballo Torres y el Procurador General, en representación del Estado Libre Asociado, acudie-

ron ante este Tribunal, de forma separada, mediante recursos de *certiorari*, imputándole al foro apelativo haber errado al resolver que la Ley Núm. 355, ante, no tuvo el efecto de derogar la Ley de Municipios Autónomos en todo aquello en que ésta fuese incompatible con aquélla; al resolver que el Convenio de Transferencia otorgado entre el Municipio y el Gobierno central no quedó sin efecto al aprobarse la Ley Núm. 355, ante, y al concluir que el tribunal de instancia tenía jurisdicción para considerar la controversia cuando el foro con jurisdicción primaria era A.R.Pe.

Examinados ambos recursos, expedimos y los consolidamos. Contando con la comparecencia de las partes y estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## I

El primer señalamiento de error de los peticionarios se circunscribe a determinar si la aprobación de la Ley Núm. 355, ante, tuvo el efecto de derogar las disposiciones de la Ley Núm. 81, ante, que fuesen incompatibles con ella.

La Asamblea Legislativa aprobó la Ley Núm. 81, ante, Ley de Municipios Autónomos, entre otras cosas, para ampliar el ámbito de facultades y funciones de los municipios, transfiriéndoles competencias de planificación y reglamentación de sus territorios, y autorizando que se les delegue otras materias de la competencia del Gobierno Central.

En consecución de este propósito, la mencionada ley, en su Art. 13.012 (21 L.P.R.A. sec. 4610), permite a los municipios solicitarle al Gobernador del Estado Libre Asociado de Puerto Rico la transferencia de algunas de las facultades correspondientes a A.R.Pe. o a la Junta de Planificación, entre éstas, la facultad de otorgar permisos.

En virtud del referido artículo, se transfirieron al Municipio —mediante un Convenio de Transferencias suscrito

el *25 de noviembre de 1992* entre el Gobierno central y el Municipio— las facultades, que correspondían original-mente a A.R.Pe., sobre la concesión de permisos para la instalación y exhibición de rótulos y anuncios.(³) Específica-mente, las facultades y los poderes de A.R.Pe. se transfirie-ron a la Oficina de Permisos del Municipio Autnómo de Ponce, creada para atender, entre otros asuntos, todo lo referente a las solicitudes de permisos para instalar rótulos.

■ Vigente tanto la antes mencionada Ley Núm. 81 como el Convenio de Transferencia, *en 1999 la Asamblea Legislativa aprobó la Ley Núm. 355, ante, sobre rótulos y anuncios.* La Exposición de Motivos de esta pieza legisla-tiva establece que el *propósito del legislador* al aprobar la Ley Núm. 355, ante, fue crear normas claras, efectivas y fáciles de implementar *por A.R.Pe.* y que, mediante su adopción, se *derogaban* las disposiciones de leyes vigentes que gobernaban la solicitud, trámite, expedición y renova-ción de permisos para instalar rótulos y anuncios. De este modo, se creaba una *ley uniforme* de rótulos y anuncios, y por medio de ésta, además, se permitiría a A.R.Pe. contro-lar más efectivamente la instalación y localización de estos medios de expresión.

■ Añade la referida Exposición de Motivos que esta ley brindará certeza a las personas que se dedican a esta

---

(³) Dispone el referido convenio, en la Cláusula III-A, que de acuerdo con lo que establecía el Art. 13.012 de la Ley de Municipios Autónomos del Estado Libre Aso-ciado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4610), se transferían al Municipio las facultades para recibir, evaluar y decidir sobre la petición de autorizaciones y per-misos conforme a las siguientes jerarquías:

"Jerarquía I

"(1) Permiso de uso para estructuras o solares existentes y de permisos para la instalación y exhibición de rótulos y anuncios, ambos permisos para usos de instala-ciones que estén conformes a la reglamentación vigente y no requieran variaciones o excepciones, y no sean usos o estructuras no conformes legales ....

"Jerarquía II

"(1) Permiso de uso para estructuras o solares existentes y de permisos para la instalación y exhibición de rótulos y anuncios, ambos permisos para usos o instala-ciones que no estén conformes a la reglamentación vigente y requieran excepciones o variaciones en construcción o variaciones en instalación de rótulos y anuncios ...."

actividad comercial *al unir en un solo cuerpo de ley* todas las normas que controlarán, en adelante, la instalación de rótulos y anuncios en nuestra Isla.

En sus disposiciones introductorias, la Ley Núm. 355, ante, *establece de forma específica la derogación de las disposiciones de la Ley Núm. 81, ante, y de los reglamentos promulgados a su amparo que fuesen incompatibles con lo provisto en ella.* También dispone que la ley aplicará a toda persona dedicada a la fabricación, la instalación, la venta, el mantenimiento y la remoción de rótulos y anuncios en zonas zonificadas y no zonificadas en Puerto Rico, y que aplicará a todo rótulo o anuncio instalado con el propósito de que sea visto desde una vía pública.

*Como vemos, la clara intención del legislador fue devolverle a A.R.Pe. la competencia en el área de rótulos y anuncios instalados en Puerto Rico, y derogar las disposiciones de la Ley Núm. 81, ante, que permitían que la referida competencia en esta área fuese transferida a los municipios.* De este modo, dispone la Ley Núm. 355, ante, que A.R.Pe. hará obligatoria la inscripción de los anuncios en un *registro* que será creado y controlado por ésta, y tendrá la facultad para velar el cumplimiento de las disposiciones de la Ley Núm. 355, ante, en cuanto a restricciones y prohibiciones en la instalación, el tamaño, la ubicación, el diseño y el mantenimiento de rótulos y anuncios. Arts. 5–13 de la Ley Núm. 355, ante, 9 L.P.R.A. secs. 51a–51i.

De acuerdo con estas facultades, establece la referida Ley Núm. 355, en su Art. 7, que, *a partir de su vigencia*, toda persona que desee instalar un rótulo o anuncio *deberá obtener un permiso de A.R.Pe.* para poderlo hacer. 9 L.P.R.A. sec. 51c. Añade, además, que en casos de anuncios no conforme a lo dispuesto en la ley, se considerarán anuncios con permisos —bajo alguna reglamentación anterior— únicamente aquellos otorgados bajo la reglamentación vigente a la fecha de su instalación y que, efectivamente,

hayan obtenido el correspondiente permiso. Aquellos anuncios que *no* contengan permisos otorgados bajo cualquier reglamentación anterior y sobre los cuales no exista un procedimiento iniciado por A.R.Pe., deberán ser borrados, suprimidos, eliminados o conformados a la ley mediante la obtención de un permiso de instalación que otorgará A.R.Pe. Art. 16(a) y (b) de la Ley Núm. 355, ante, 9 L.P.R.A. sec. 51*l*.

Es *claro*, entonces, que la Asamblea Legislativa pretendió, mediante la aprobación de una ley *uniforme* de rótulos y anuncios, *crear un único procedimiento y conferirle a una única agencia la jurisdicción sobre la solicitud, trámite y concesión de permisos de rótulos para todo Puerto Rico.* Esto es, la Legislatura *devolvió* a A.R.Pe. las referidas facultades para que fuera éste el organismo con jurisdicción para atender *todo* asunto relacionado con la solicitud y aprobación de permisos para la instalación de rótulos y anuncios.

En consecuencia, *resolvemos* que todo lo concerniente al asunto de la evaluación, emisión de permisos para instalar y exhibir rótulos se regirá por la Ley Núm. 355, ante, y que la agencia encargada de velar el cumplimiento de esta ley es A.R.Pe., quien tendrá la facultad de emitir los mencionados permisos.

Como fundamento adicional de la anterior conclusión, debe señalarse, además, que la Asamblea Legislativa aprobó la Ley Núm. 336 de 2 de septiembre de 2000. Dispone la Exposición de Motivos de la referida ley que *la Ley Uniforme de Rótulos y Anuncios estableció la política pública del Gobierno de Puerto Rico en el área de la industria de rótulos y anuncios.* La referida pieza legislativa expresa, además, que *se asignó a A.R.Pe. la implantación y fiscalización de dicha ley.*

La Ley Núm. 336, ante, fue aprobada para, entre otros propósitos, enmendar el Art. 33 (9 L.P.R.A. sec. 56f)

de la antes citada Ley Núm. 355, y proveer la retención del treinta y cinco por ciento de los derechos cobrados por la concesión de permisos de instalación de rótulos y multas impuestas por A.R.Pe. para remitirlos al municipio. El legislador consideró que la Ley Núm. 355, ante, afectaría las arcas de los municipios autónomos con Oficinas de Permisos establecidas, ya que, si bien las relevaba del trabajo de fiscalizar los rótulos y anuncios en sus municipios, también el municipio dejaba de percibir algunos de los arbitrios que cobraba. Por ello, enmendó la Ley Núm. 355, ante, y dispuso para la entrega anual al municipio del treinta y cinco por ciento del ingreso que generaran los rótulos y anuncios. Exposición de Motivos de la Ley Núm. 336, ante, 2000 Leyes de Puerto Rico 1854.

*Este esquema de compensación para los municipios constituye evidencia adicional de la intención del legislador de retirarle a todos los municipios la facultad de emitir permisos para la instalación de rótulos y anuncios.* De lo contrario, no hubiese sido necesario compensarlos mediante el esquema establecido en la Ley Núm. 336, ante. La Exposición de Motivos de la Ley Núm. 366, ante, además, *refuerza nuestra determinación a los efectos que el propósito de la Asamblea Legislativa al aprobar la Ley Núm. 355, ante, fue depositar en A.R.Pe. la implantación de toda reglamentación referente a la industria de rótulos y anuncios.*

## II

Habiendo resuelto que la Ley Núm. 355, ante, le devolvió la jurisdicción a A.R.Pe. para la emisión de permisos de instalación de rótulos y anuncios, *analizamos si erró el Tribunal de Apelaciones al determinar que dicha ley no podía afectar el Convenio de Transferencia suscrito entre el Municipio y el Gobierno central.* Sobre este particular, sostiene el Municipio que privarlo de su jurisdicción para autorizar

la emisión del permiso del rótulo en cuestión, *constituye una violación del referido convenio, el cual constituye la ley entre ambas partes contratantes.*

■ De entrada, es incuestionable que la Asamblea Legislativa *tiene entera facultad de aprobar, enmendar o derogar leyes.* Por ello, la existencia de un convenio otorgado por el Gobierno sobre determinada materia *no* puede tener el efecto de privar a la Asamblea Legislativa de legislar sobre esa materia. En específico, la existencia de convenios de delegación de competencias entre los municipios y el Gobierno central —en virtud de la Ley de Municipios Autónomos— *no* puede privar a la Asamblea Legislativa de ejercer su función de legislar en cuanto a asuntos incluidos en la Ley de Municipios Autónomos, *aun cuando* los convenios puedan afectarse por este acto. Además, la existencia de los referidos convenios tampoco puede privar a la Asamblea Legislativa de su facultad de aprobar cualquier otra ley, aunque tenga el efecto de incidir sobre su contenido.

■ Después de todo, nuestro ordenamiento jurdíco reconoce que los municipios son *meras criaturas* del Estado. *López, Fed. Coms. Unidos v. Mun. de San Juan*, 121 D.P.R. 75, 85 (1988). *Por ello, la Asamblea Legislativa posee la autoridad para revocar cualquier delegación de competencia previamente concedida a los municipios.*

■ Es correcto que, en materia de contratación gubernamental, este Tribunal ha expresado que los *convenios de transferencias* son contratos que tienen fuerza de ley, se presumen válidos y son vinculantes entre las partes. Véase *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776 (1994). *No obstante, éstos tienen que ser conformes a la ley y a la política pública, ya que su causa es el interés público.* Véase *Mun. de Ponce v. A.C. et al.*, 153 D.P.R. 1 (2000).

■ Específicamente, este Tribunal ha reconocido que el Art. 13.012 de la Ley Núm. 81, ante, establece que la

facultad cuya transferencia sea autorizada por dicha ley *se ejercerá conforme a las normas y los procedimientos establecidos en la legislación, reglamentación y política pública aplicables a la facultad transferida.* Véase *Maymí v. Gob. Mun. Aut. Ponce,* 151 D.P.R. 689 (2000).

Lo anterior significa que la facultad transferida en virtud de un convenio de transferencias tiene que ajustarse a la política pública. En otras palabras, *los referidos convenios no están desvinculados de los cambios en la política pública gubernamental. Tampoco pueden ser inmunes a dichos cambios.* Por ello, *un cambio en la política pública implica, necesariamente, un ajuste o la ineficacia de un convenio de transferencias otorgado en virtud de ésta.*

En fin, la Ley Núm. 355, ante, establece una *nueva política pública* del Estado en materia de la reglamentación y concesión de permisos para la instalación y exhibición de rótulos y anuncios. Esta nueva política pública resulta *incompatible* con la delegación de facultades relacionadas con esta área a los municipios por medio de la Ley Núm. 81, ante, y del Convenio de Transferencia. Siendo la *clara intención* de la Asamblea Legislativa, mediante la aprobación de la Ley Núm. 355, ante, la *derogación* de las disposiciones de la Ley Núm. 81, ante, que disponían que los municipios podían solicitarle al Gobierno la facultad para emitir permisos para instalar rótulos y anuncios, *resulta forzosa, como consecuencia, la ineficiencia de los convenios de transferencias otorgados en virtud de dichas disposiciones.* Dicho de otra forma, mediante la aprobación de la Ley Núm. 355, ante, quedan *sin efecto* aquellas *disposiciones* contenidas en los referidos convenios mediante las cuales se transfirieron a los municipios las facultades sobre la concesión de permisos para la instalación de rótulos. *Ello en virtud de que estos convenios, repetimos, están sujetos a los cambios de política pública gubernamental y a las leyes.* La determinación del foro apelativo a estos efectos es, por consiguiente, errónea.

■ Además, la determinación del foro apelativo intermedio, a los efectos que la referida Ley Núm. 355 aplica únicamente a aquellos municipios que no hubieran suscrito convenios de transferencia, tendría el efecto de *desvirtuar* el propósito de esta legislación. *El claro propósito de esta ley, repetimos, fue uniformar en todo Puerto Rico el procedimiento y las reglas para obtener los permisos en todo lo referente a rótulos y anuncios, de modo que sea A.R.Pe. la única agencia con esa facultad. Esta ley aplica a todos los municipios, hayan o no firmado un convenio.*

Hay que recordar que los municipios, como el de Ponce, que otorgaron esta clase de convenios con el Gobierno Central *no* quedan totalmente desprovistos. *Conforme expresáramos anteriormente, la Ley Núm. 336, ante, provee para que dichos municipios reciban el treinta y cinco por ciento de los derechos que se cobren por la concesión de permisos de instalación de rótulos y multas impuestas por A.R.Pe.* Dicha acción legislativa *suaviza el impacto* de las tajantes disposiciones de la Ley Núm. 355, ante.

### III

Mediante el tercer señalamiento de error, se le imputa al foro apelativo incidir al resolver que el foro primario tenía jurisdicción para considerar la controversia. El foro apelativo determinó que siendo la Oficina de Permisos del Municipio Autónomo de Ponce la entidad con competencia para otorgar el permiso de instalación del anuncio en controversia, el tribunal de instancia tenía jurisdicción para entrar a dilucidar la controversia en cuanto a las alegadas violaciones a los reglamentos del Municipio. Somos del criterio que, aun cuando el tribunal de instancia, ciertamente, tenía facultad para determinar qué organismo tenía jurisdicción para emitir los permisos —si A.R.Pe. o la Oficina de Permisos del Municipio Autónomo de Ponce— *una vez determinó que la jurisdicción para emitir el per-*

*miso correspondía a A.R.Pe., estaba obligado a abstenerse de intervenir en la controversia sobre la legalidad del anuncio instalado.* Erró el foro apelativo al hacer la determinación contraria.

En mérito de lo antes expuesto, *procede dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unió la Jueza Asociada Señora Fiol Matta.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une la Jueza Asociada Señora Fiol Matta.

En el caso de autos, el Tribunal de Apelaciones resolvió concretamente que la competencia para implantar la Ley Núm. 355 de 22 de diciembre de 1999 y el Código Uniforme sobre Rótulos y Anuncios, *dentro de los límites territoriales del Municipio Autónomo de Ponce* (Municipio), es de la Oficina de Permisos del Municipio Autónomo de Ponce, y no de la Administración de Reglamentos y Permisos (A.R.Pe.). Como considero que ese dictamen es correcto, *disiento* de lo resuelto en contrario por la mayoría del Tribunal aquí. Veamos.

La mayoría del Tribunal tiene razón al señalar que al aprobarse la Ley Núm. 355, *supra*, que aquí nos concierne, la Asamblea Legislativa procuró establecer un cuerpo normativo uniforme en lo que respecta a la instalación de rótulos y anuncios en Puerto Rico. Las disposiciones medulares de esa ley son vinculantes en cualquier lugar de Puerto Rico, incluyendo al Municipio. La implantación de la nueva política pública del país sobre este asunto se le

encomendó indudablemente como cuestión general a A.R.Pe.

Sin embargo, para lograr los propósitos legislativos referidos *no es imprescindible* concluir, como lo hace la mayoría del Tribunal, que la citada Ley Núm. 355 también tuvo el efecto de derogar el Convenio de Transferencia de Competencias de la Junta de Planificación de Puerto Rico y la Administración de Reglamentos y Permisos, suscrito entre el Municipio y el Gobierno central del país. Más aún, *no hay nada, ni una sola palabra,* en el texto de la referida Ley Núm. 355 que disponga tal derogación. *Tampoco hay nada a tales efectos en el extenso historial de la Ley Núm. 355, supra.* Dicho historial abarca cientos de páginas e incluye varios informes de comisiones legislativas al igual que la transcripción de los testimonios y discusiones en las varias vistas públicas que se celebraron en la Legislatura en torno a los anteproyectos de la referida Ley Núm. 355. *No hay nada en todos los documentos referidos* que siquiera intime que el legislador tuvo la intención de derogar el convenio referido, o cualquier otro. No hay nada que sugiera que los pocos municipios autónomos que han suscrito tales convenios estén impedidos de compartir limitadamente con A.R.Pe. la implantación de la nueva política pública sobre rótulos y anuncios.

Por el contrario, como bien señala el Tribunal de Apelaciones en su sentencia, en el 2001 se presentó ante la Asamblea Legislativa un proyecto de ley dirigido a restituir a los municipios del país la facultad de reglamentar la instalación de rótulos y anuncios dentro de sus demarcaciones. Dicho proyecto procuraba favorecer a todos los municipios, *en particular los que no tenían convenios de transferencia,* que evidentemente habían perdido facultades al aprobarse la Ley Núm. 355, *supra.* Durante la consideración del referido proyecto compareció ante la Asamblea Legislativa el Administrador de A.R.Pe., quien expresó claramente allí que el proyecto de la ley en cues-

tión no era necesario porque si algún municipio realmente interesaba la facultad aludida, sólo tenía que acordar un convenio sobre el particular con A.R.Pe., como los convenios de transferencia que ya existían. Es evidente de lo anterior que A.R.Pe. consideraba que al aprobarse la Ley Núm. 355, *supra*, no se afectaron los convenios de transferencia de competencias existentes. Y, como se sabe, la interpretación de una ley formulada por la agencia encargada de su implantación merece deferencia por este Tribunal. *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991).

Por otro lado, debe notarse que los referidos convenios de transferencia de competencias son en gran medida *instrumentos legislativos especiales.* No sólo están extensamente reglamentados mediante un conjunto de disposiciones legislativas sustanciales, sino que antes de que un convenio sea aprobado por el Gobernador de Puerto Rico, *éste tiene que ser autorizado específicamente por la Legislatura, mediante el voto afirmativo de dos terceras partes del número total de miembros de la Asamblea Legislativa.* 21 L.P.R.A. secs. 4656 y 4657. Dichos convenios, según hemos resuelto antes, tienen fuerza de ley *y obligan mientras no sean declarados nulos judicialmente. Mun. de Ponce v. A.C. et al.*, 153 D.P.R. 1 (2000); *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776 (1994). Dichos convenios, además, tienen sus propias cláusulas de vigencia y revocación, que no pueden ser ignoradas livianamente sin levantar serios problemas constitucionales al amparo de la garantía contra el menoscabo de las obligaciones contractuales de la Sec. 7 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, *que aplica aun cuando el Estado es contratante. Bayrón Toro v. Serra*, 119 D.P.R. 605 (1987).

Por todas las razones y los fundamentos antes mencionados, no parece procedente que se considere que el convenio de transferencia de competencias que aquí nos concierne fue derogado tácitamente, como estima la mayoría

del Tribunal. Como se sabe, las *derogaciones tácitas no son favorecidas en nuestro ordenamiento jurídico.* Ausentes los términos que denoten claramente y sin lugar a dudas la intención de derogar, *la presunción es en contra de la derogación. Director I.C.P. v. Fitzgerald, etc.*, 130 D.P.R. 46 (1992); *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610 (1990); *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113 (1989); *Campis v. Pueblo*, 67 D.P.R. 393 (1947); *Pérez v. Sucesión Collado*, 19 D.P.R. 1061 (1913). Mucho menos debe estimarse que existe una derogación tácita cuando se trata de un instrumento de la envergadura del que aquí nos concierne, que encarna una política pública novedosa y de gran relieve.

En resumen, al intentar descubrir cuál fue la intención legislativa con respecto al posible conflicto entre *dos esquemas estatutarios importantes y de actualidad*, es más razonable y consecuente con la voluntad del legislador hacer una interpretación que salvaguarde *ambos esquemas*, que una que vitalice uno de ellos a costa del otro. Véanse: *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986); *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987).

Como la mayoría opta por otro curso de acción, yo *disiento.*