EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wildralee Laureano<br><br>Recurrido<br><br>v.<br><br>Municipio Autónomo de Bayamón<br><br>Recurrida | Certiorari<br><br>2017 TSPR 27<br><br>197 DPR ____ |

Número del Caso: CC-2015-30
        Cons. CC-2015-55

Fecha: 22 de febrero de 2017

**CC-2015-30**

Tribunal de Apelaciones:

    Región Judicial de Bayamón y Utuado, Panel VI

Abogado de la Parte Peticionaria:

    Lcdo. Ricardo Robles Caraballo

Abogado de la Parte Recurrido:

    Lcda. María Elisa Martínez Avilés

**CC-2015-55**

Tribunal de Apelaciones:

    Región Judicial de Bayamón y Utuado, Panel VI

Abogado de la Parte Peticionaria:

    Lcda. María Elisa Martínez Avilés

Abogado de la Parte Recurrida:

    Lcdo. Ricardo Robles Caraballo

Materia: Ley de Municipio Autónomos: Un municipio no tiene facultad de revocar un permiso de uso que previamente otorgó.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wildralee Laureano

    Recurrido

       v.

Municipio Autónomo de
Bayamón

    Peticionario

CC-2015-030    Certiorari
Cons. CC-2015-055

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 22 de febrero de 2017.

En el presente caso nos corresponde determinar si un municipio, -- en virtud de la Ley de Municipios Autónomos, *infra*, así como de la Ley para la Reforma de Permisos Administrativos, *infra* --, tiene la facultad de revocar un permiso de uso otorgado por este, o si para hacerlo, tiene que acudir a los foros judiciales, tal y como se les requiere a las agencias del poder ejecutivo que realizan similares tareas.

Al examinar detenida y cuidadosamente las referidas disposiciones legales, adelantamos que, respecto a la facultad de revocar permisos de uso, tanto los municipios, como las agencias del poder ejecutivo, se encuentran en igual posición, a saber: carecen de la referida facultad. Dicha potestad, como

explicaremos más adelante, recae exclusivamente en los tribunales. Veamos.

## I.

Allá para el año 2011, el Municipio Autónomo de Bayamón (en adelante "Municipio"), a través de su Oficina de Permisos, otorgó a la señora Wildralee Laureano Rivera (en adelante "señora Laureano Rivera") un permiso de uso (PU-11-955) para operar un "*Hogar Sustituto y Cuido de Incapacitados*" en una edificación ubicada en la Carretera 829, KM 4.5, sector Pepín Cabrera, en el Barrio Santana Olaya del referido municipio. Lo anterior dentro de los límites de un distrito de ordenación calificado R-G (Rural General), según el mapa de ordenación territorial vigente en ese Municipio, conforme al Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos.

Así las cosas, e inconforme con la alegada forma en que se utilizaba la mencionada propiedad, el señor Lázaro Ginart López, vecino de la comunidad donde la señora Laureano Rivera operaba el hogar, presentó una querella en la Oficina de Permisos del Municipio. Mediante ésta alegó que la referida propiedad se estaba utilizando en violación al permiso otorgado o sin permiso, por lo que solicitó que se realizara una vista administrativa.

A raíz de ello, y luego de realizar la inspección de rigor, la Oficina de Permisos del Municipio emitió una notificación de "vista administrativa y/o pública sobre

posible revocación [de permisos]" basada en lo siguiente: "1) violación al permiso de uso [aprobado]; 2) los participantes del hogar [tienen] problemas de adicción y mentales; 3) no hay vigilancia y [esto] afecta [la] seguridad [de] -otros residentes; y 4) [los participantes] tienen libre entrada y salida del lugar." A la mencionada vista administrativa comparecieron la señora Laureano Rivera, así como varios vecinos del lugar que se oponían al permiso de uso.

Celebrada la referida vista, -- y a pesar de los planteamientos de la señora Laureano Rivera de que la Oficina de Permisos Municipal carecía de facultad para revocar permisos -- la Oficial Examinadora asignada por la Oficina de Permisos para atender el caso rindió su *Informe sobre Acuerdo Adoptado por la Oficial de Permisos*. Al así hacerlo, concluyó que la señora Laureano Rivera: 1) indujo a error a la Oficina de Permisos del Municipio, al solicitar un permiso de uso para un hogar sustituto y cuido de incapacitados cuando en realidad en la edificación operaba un hogar de jóvenes con problemas de conducta; 2) no podía operar el hogar de manera juiciosa y de forma que resultara conveniente a la comunidad; y 3) mintió al indicar que para la concesión de su permiso de uso se había celebrado una vista pública a los fines de dar participación a los vecinos del lugar en el procedimiento; hecho que no es cierto según se desprendía del expediente ante la consideración de la Oficial Examinadora. Siendo

ello así, la mencionada Oficina procedió a revocar el permiso de uso expedido a favor de la señora Laureano Rivera y ordenó el cierre inmediato del establecimiento.

Oportunamente, la señora Laureano Rivera solicitó la revisión de la decisión de la Oficina de Permisos ante la ahora extinta Junta Revisora de Permisos y Uso de Terrenos (en adelante "Junta Revisora"). Allí, similar a lo planteado ante la Oficina de Permisos del Municipio, argumentó que dicha oficina tenía la facultad de atender querellas, pero no la facultad de revocar, a través de una querella, un permiso que ésta había concedido. Adujo también que, una vez investigada la querella, para poder revocar un permiso, el Municipio tenía que acudir a los foros judiciales.

Evaluados los planteamientos de las partes y luego de varios incidentes procesales no necesarios aquí pormenorizar, la Junta Revisora emitió una *Resolución* en la que devolvió el caso a la Oficina de Permisos del Municipio por entender que, al momento de otorgar el permiso de uso solicitado, no hubo una vista pública a los fines de darle participación de los vecinos del lugar en el procedimiento. Nada dispuso sobre el planteamiento relacionado a la facultad de ésta para revocar permisos de uso.

Inconforme con dicho proceder, la señora Laureano Rivera recurrió al Tribunal de Apelaciones mediante recurso de revisión judicial, y alegó, en esencia, que la Junta Revisora erró al no concluir que el permiso de uso en

cuestión era final y firme, por lo que el Municipio carecía de autoridad para revocarlo; al devolver el caso a la Oficina de Permisos para la celebración de una vista respecto al permiso de uso solicitado cuando lo que se encontraba ante su consideración era un permiso revocado; al no reconocer que el permiso de uso otorgado era ministerial y no requería la celebración de vista administrativa; y al no disponer adecuadamente de los señalamientos de error planteados por la recurrente. A dicha solicitud, el Municipio se opuso.

Examinadas las comparecencias de ambas partes, el Tribunal de Apelaciones emitió sentencia. Mediante la misma determinó que la Oficina de Permisos del Municipio, al atender la controversia que tenía ante su consideración, debió haber seguido un procedimiento análogo al que se establece para que el Director Ejecutivo de la Oficina de Gerencia de Permisos (OGPe) revoque un permiso de uso, a saber: instar un procedimiento judicial. Sin embargo, por entender que el permiso de uso en cuestión era nulo *ab initio*, por no haberse celebrado una vista pública previo a su otorgamiento, dicho foro confirmó la *Resolución* emitida por la extinta Junta Revisora y sostuvo que la Oficina de Permisos del Municipio tenía facultad para revocarlo.

Insatisfechos aún, ambas partes acudieron a este Tribunal mediante recurso de *certiorari*. La señora Laureano Rivera alega, en síntesis, que la Oficina de Permisos del Municipio no tenía autoridad para revocar el permiso en

cuestión. Por su parte, el Municipio alega, en esencia, que erró el Tribunal de Apelaciones al determinar que un municipio autónomo con jerarquía de la I a V está sujeto al mismo procedimiento para la revocación de un permiso que se le impone al Director Ejecutivo de la OGPe, en los casos en que una querella se presenta por una parte afectada cuya propiedad no está en un municipio autónomo.

Consolidados los recursos presentados por ambas partes ante este Tribunal, con el beneficio de la comparecencia de ambas, procedemos a resolver.

II.

Como es sabido, la Ley Núm. 81-1991, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico (21 L.P.R.A. sec. 4001 *et seq.*), es la piedra angular de los procesos de reforma municipal iniciados a principio de la década de los noventa. *L. Santana Rabell & N. Negrón Portillo, La Reforma Municipal en Puerto Rico: Retos y Oportunidades, 1ra Ed., Puerto Rico, Ed. Universidad de Puerto Rico, 1993, pág. 14; Alcalde de Guayama v. E.L.A., 192 D.P.R. 329 (2015).*

Dicha reforma se instrumentó con el propósito de *"iniciar un proceso de renovación político-administrativa del gobierno municipal con la finalidad de fomentar una mayor autonomía y la descentralización gubernamental de Puerto Rico."* Íd.; *Mun. De Ponce v. A.C. et al.*, 153 D.P.R. 1, 22 (2000); *Alcalde Mun. De Humacao v. Ramos Cofresí,*

140 D.P.R. 587, 595 (1996). Entre las metas que se contemplaron al momento de aprobar la misma, se encontraban: "*(1) la transferencia de poderes, mecanismo de descentralización de competencias del gobierno central hacia los municipios mediante el establecimiento de convenios […], (2) [l]a reforma administrativa y (3) [l]a autonomía fiscal, razón por la cual se crea el Centro de Recaudación de Ingresos Municipales.*" *Municipio de Ponce v. A.C. et al.*, 153 D.P.R. 1, 8 (2001); *Ortiz y otros v. Mun. de Lajas*, 153 DPR 744, 754 (2001).

A tenor con esas metas, y con la aprobación y puesta en vigor de la Ley de Municipios Autónomos, *supra*, se declaró como política pública del Estado Libre Asociado de Puerto Rico, otorgar a los municipios del país el máximo posible de autonomía y proveerles a estos las herramientas financieras y los poderes y facultades necesarias para asumir un rol central y fundamental en el desarrollo urbano, social y económico de nuestro pueblo. Art. 1.002 de la Ley Núm. 81-1991; *Rivera Fernández v. Mun. Carolina*, 190 D.P.R. 196 (2014); *The Sembler Co. v. Mun. de Carolina*, 185 D.P.R. 800, 811-12 (2012); *E.L.A. v. Crespo Torres*, 180 D.P.R. 776, 787 (2011).

Así pues, mediante la aprobación de la Ley de Municipios Autónomos, *supra*, se amplió el ámbito de facultades y funciones de los municipios, se autorizó la transferencia de competencias de planificación y reglamentación de sus territorios, y se autorizó la

delegación de otras materias de la competencia del Gobierno Central. *Gobierno Ponce v. Caraballo*, 166 D.P.R. 723, 731 (2006); *Maymí v. Gob. Mun. Aut. Ponce*, 151 D.P.R. 689 (2000).

Sobre este particular, la Ley de Municipios Autónomos en su Art. 1.002, 21 LPRA sec. 4001, reconoce que:

> *"[l]a transferencia de poderes y competencias al igual que la reducción de la intervención del Gobierno Central en los asuntos municipales y la ampliación del marco de acción del municipio a las áreas que hasta el presente le estaban vedadas o limitadas, propulsarán una Reforma Municipal real y efectiva que culminará en la genuina redefinición y reestructuración del Gobierno Central, con una mayor democratización. Ello en cumplimiento con el eminente interés público de proveer a la ciudadanía un gobierno efectivo y responsivo a sus necesidades y aspiraciones en el Siglo XXI."*

A tenor con ese fin, el Art. 2.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4054, facultó a los municipios para *"ordenar, reglamentar y resolver cuando sea necesario o conveniente para atender las necesidades locales y para su mayor prosperidad y desarrollo"*. También se les facultó para crear la política, las estrategias y los planes dirigidos a ordenar su territorio y a la conservación de sus recursos. *Íd.*

En ese sentido, la Ley de Municipios Autónomos, *supra*, *"cristalizó una reforma municipal que permitió la delegación a los gobiernos locales de una amplia gama de poderes y competencias de diversas agencias de la administración central, entre éstas de la Junta [de*

*Planificación] y [OGPe]."* Unlimited v. Mun. de Guaynabo,
183 D.P.R. 947, 961-62 (2011).

Ahora bien, es menester señalar que, conforme al Art.
13.012 de la Ley de Municipios Autónomos, 21 LPRA sec.
4610, la transferencia de facultades a las que hemos
aludido se realiza a través de unas clasificaciones
denominadas "Jerarquías", que van de la I hasta la V de
acuerdo al nivel de complejidad y la capacidad del
Municipio para asumirlas. Dichas clasificaciones se crearon
reconociendo que, al momento de aprobación de la referida
ley, no todos los municipios estaban preparados para asumir
todas las responsabilidades que se derivaban de la
mencionada disposición legal. Siendo ello así, los poderes
y competencias que bajo esta ley un municipio puede
ejercer, varían desde solo tener el poder limitado de
otorgar permisos de uso a estructuras existentes, en la
Jerarquía I, hasta poseer casi todos los poderes que posee
la [OGPe], cuando se trata de un municipio Jerarquía V. *L.
Santana Rabell & N. Negrón Portillo, supra, en la pág. 152.*

En relación a la controversia que nos ocupa, y
tratándose de un municipio Jerarquía V, como lo es el
Municipio de Bayamón[1], la Ley de Municipios Autónomos
dispone que:

---

[1] Un municipio clasificado jerarquía V posee, a su vez, las facultades de las jerarquías I, II, III y IV, a saber:

*(a) Jerarquía I y II*
(1)     Permisos de uso para estructuras o solares existentes, conformes a la reglamentación vigente y que no requieran excepciones o variaciones en construcción. No incluye permisos que requieran variación en uso o intensidad, cuya facultad se reserva por las agencias públicas, según se

> ***"[e]n los casos en que un municipio haya adquirido las transferencias hasta la Jerarquía V inclusive, todas las solicitudes de autorización o permiso, incluyendo el cumplimiento ambiental para las exclusiones categóricas, según los reglamentos de la Junta de Calidad Ambiental, y las reservadas por la Junta de Planificación o la***

establece más adelante en este Artículo. Se entenderá por permiso de uso para estructuras o solares existentes, aquel permiso que se otorga a estructuras o solares que habían sido ocupados anteriormente y cuyo permiso de uso no es el que se otorga inmediatamente después de realizarse una obra de construcción o segregación; de ser la primera vez que se otorga el permiso de uso, éste se otorgará por la entidad responsable de evaluar el anteproyecto o proyecto de construcción o segregación, evitando que dos distintas entidades, una del gobierno central y otra municipal, puedan analizar el mismo proyecto en distintas etapas de su evaluación y permiso. (2) Autorizaciones de Anteproyectos, Permisos de Construcción (convencionales o por Ley de Certificaciones) y Permisos de Uso, todos éstos, en suelo urbano o urbanizable. Consideración de proyectos cuya área de construcción sea menor de mil (1,000) metros cuadrados, cuya altura no exceda cuatro (4) plantas y que esté conforme a la reglamentación vigente sobre uso e intensidad. Consideración, además, de obras de urbanización incidentales e inherentes a la construcción que se autoriza. Estos proyectos, para poder ser considerados por los municipios en esta jerarquía, estarán localizados en solares con cabida menor de mil quinientos (1,500) metros cuadrados. (3) Autorización para segregar hasta diez (10) solares, incluyendo el remanente, siempre que estén conforme a los Planes de Ordenación.

*(b) Jerarquía III y IV*
    (1) Autorizaciones de Anteproyectos, Permisos de Construcción (convencionales o por Ley de Certificaciones), Permisos de Uso y Permisos para la instalación, ubicación y exhibición de rótulos y anuncios conformes a la reglamentación vigente. Consideración de proyectos cuya área de construcción sea menor de cinco mil (5,000) metros cuadrados, cuya altura no exceda cuatro (4) plantas, y que esté conforme a la reglamentación vigente sobre uso e intensidad. Consideración, además, de obras de urbanización incidentales e inherentes a la construcción que se autoriza. Estos proyectos, para poder ser considerados por los municipios en esta jerarquía, estarán localizados en solares con cabida menor de cuatro mil (4,000) metros cuadrados.(2) Autorizaciones de Desarrollo Preliminares, Permisos de Construcción de Obras de Urbanización, y Autorización de Planos de Inscripción. Consideración de proyectos de urbanización de hasta cincuenta (50) solares, conformes a la reglamentación vigente. (3) Enmiendas a los Planos de Ordenación. Consideración de solares con cabida
no mayor de dos mil (2,000) metros cuadrados. (4) Variaciones de uso y variaciones de intensidad en construcción, uso y densidad en solares urbanos o urbanizables de hasta un máximo de cuatro mil (4,000) metros cuadrados.

*(c)Jerarquía V*
    (l) Transferencia de otras facultades de la Oficina de Gerencia de Permisos y de la Junta de Planificación, incluyendo las variaciones de uso y variaciones de intensidad en construcción o uso, los sistemas industrializados de construcción de impacto subregional y todos los permisos para la instalación, ubicación y exhibición de rótulos y anuncios, exceptuando los relacionados a vías de comunicación que sean realizados con fondos federales, los reservados en el convenio, y los que se mencionan más adelante. Art.13.012 de la Ley Núm. 81 de 1991 (21 LPRA sec. 4610).

***Oficina de Gerencia de Permisos, se radicarán y
emitirán ante la Oficina de Permisos del
municipio".*** *Art. 13.012 (e)(I)(d), Ley Núm. 81-
1991.* (Énfasis nuestro).

Establecido lo anterior, según lo dispuesto en el Art.
13.017 de la Ley de Municipios Autónomos, una vez
transferidas las facultades de una Jerarquía particular,
"*[e]l municipio estará autorizado a instar los recursos
legales concernidos […] para atender, denunciar, procesar y
resolver las querellas sobre las violaciones de uso y
construcción relacionadas con las facultades o competencias
transferidas*", 21 LPRA sec. 4615.

Ahora bien, para la puesta en vigor de las facultades
delegadas la Ley de Municipios Autónomos, *supra*, exige que
el Municipio tenga una Oficina de Permisos propia. La Ley
de Municipios Autónomos define la Oficina de Permisos del
Municipio como: "*la agencia, dependencia o unidad
administrativa de uno o varios municipios con la función y
responsabilidad de considerar y resolver lo que corresponda
en los asuntos de autorizaciones y permisos de uso,
construcción o instalaciones de rótulos y anuncios del
municipio o municipios a que corresponda*". Art. 13.003 de
la Ley Núm. 81-1991, 21 L.P.R.A. sec. 4601.

Una vez creada la aludida Oficina de Permisos del
Municipio, se otorga **un convenio** entre el Municipio y el
Gobierno Central, que además de especificar las facultades
transmitidas al municipio, establecerá las limitaciones en
los poderes delegados. *The Sembler Co. v. Mun. De Carolina,
supra,* en las págs*. 811-812.*

III.

A la luz de la normativa antes expuesta, en el presente caso, se otorgó el "*Convenio de Transferencia de Ciertas Facultades de la Junta de Planificación y la Oficina de Gerencia de Permisos por el Gobierno de Puerto Rico al Municipio Autónomo de Bayamón* (en adelante "Convenio de Transferencia")", revisado en el año 2012. Dicho Convenio de Transferencia, en lo pertinente a la controversia que nos ocupa, en su sección III (A) dispone lo siguiente:

> "[…][E]l *Gobernador de Puerto Rico en representación del Gobierno Central transfirió al Municipio las facultades para: recibir, evaluar y decidir sobre las* **solicitudes** *de la Junta de Planificación y de la Oficina de Gerencia de Permisos, referentes a la Ordenación Territorial conforme se establece en el Artículo 13.012 de la Ley de Municipios Autónomos.* […]" (Énfasis nuestro).

Mediante el referido Convenio de Transferencia, en su Art. III (C) (5), el Gobierno Central también le transfirió al Municipio Autónomo de Bayamón las facultades de recibir, evaluar y decidir sobre solicitudes de la Junta de Planificación y la Oficina de Gerencia de Permisos, y se le transfirieron las facultades de la Jerarquía I a la V, que incluyen, entre otras, como en el presente caso, la facultad de atender permisos de construcción y permisos de uso.

Ahora bien, el aludido Convenio de Transferencia, sin embargo, no contiene disposición alguna respecto a la

revocación de permisos. Meramente, en su sección II (T), se limita a señalar que "*[e]l Municipio se compromete a que sus esfuerzos en la implantación de las facultades transferidas mediante este Convenio serán consecuentes con la política pública y las normas establecidas por la Primera Parte*".[2] Además, la sección III (B) (5) del Convenio ante nos, cede todas las facultades legales que tienen las agencias y autoriza al Municipio a instar recursos legales concernidos para atender, procesar y resolver querellas sobre violaciones de uso y construcción relacionadas a las facultades transferidas.

Como se puede apreciar, del Convenio de Transferencia ante nuestra consideración, claramente se desprende que el Municipio Autónomo de Bayamón tenía la facultad de otorgar permisos de uso. No obstante, nada se dispuso en el referido documento respecto a la facultad para revocarlos. Disponer de ello requiere, pues, examinar la naturaleza y facultades de la agencia que delega el poder, y el alcance de la equiparación de funciones y facultades que el legislador contempló. Veamos.

IV.

Sabido es que la Ley Núm. 161-2009, *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, 23 LPRA sec. 9011, *et seq.*, es la disposición legal que establece el marco jurídico y administrativo que rige la solicitud,

---

[2] "Primera Parte" se refiere al Gobierno de Puerto Rico, denominado "El Gobierno Central". Convenio de Transferencia de Ciertas Facultades de la Junta de Planificación y la Oficina de Gerencia de Permisos por el Gobierno de Puerto Rico al Municipio Autónomo de Bayamón.

evaluación, concesión y denegación de permisos por el Estado Libre Asociado de Puerto Rico. Mediante dicho estatuto se eliminó la Administración de Permisos y Reglamentos (ARPE) y se creó la Oficina de Gerencia de Permisos (OGPe). A partir de la fecha de vigencia de la Ley Núm. 161-2009, y en virtud de su Art. 2.5 23 LPRA sec. 9012d, la OGPe quedó facultada para emitir determinaciones finales, permisos y certificaciones para la prevención de incendios, certificados de salud ambiental relacionados directa o indirectamente al desarrollo y uso de terrenos que, previo a la aprobación de la Ley, eran evaluados y expedidos o denegados por las entidades gubernamentales concernidas.

La referida disposición legal creaba una "Junta Revisora" que fue, posteriormente, eliminada al aprobar la *Ley Núm. 151-2013, Ley para enmendar la Ley para la Reforma del Proceso de Permisos de Puerto Rico*, 2013 LPR 151. Dicha ley enmendó la Ley 161-2009, *supra*, y realizó cambios importantes en el procedimiento de revisión y reconsideración de determinaciones finales. Entre ellos, se eliminó la aludida "Junta Revisora", y se dispuso para la aplicación de la Ley Núm. 170 del 12 de agosto de 1998, *Ley de Procedimiento Administrativo Uniforme*, 3 LPRA sec. 2101 *et seq.,* en todo lo relacionado al proceso de revisión administrativa. A pesar de estos cambios trascendentales, quedó inalterada la facultad que la Ley Núm. 161-2009, *supra*, le reconoce a los municipios para otorgar y denegar

permisos en virtud de la Ley de Municipios Autónomos,
*supra.*

De otra parte, el Art. 9.10 de la Ley Núm. 161-2009,
respecto al proceso de revocación de permisos otorgados por
la referida agencia, dispone, en lo pertinente, lo
siguiente:

> "Se presume la corrección y la legalidad de las
> determinaciones finales y de los permisos
> expedidos por la Oficina de Gerencia de Permisos,
> por el Municipio Autónomo con Jerarquía de la I a
> la V y por los profesionales autorizados. **No
> obstante, cuando medie fraude, dolo, engaño,
> extorsión, soborno o la comisión de algún otro
> delito en el otorgamiento o denegación de la
> determinación final o del permiso**, o en aquellos
> casos en que la estructura represente un riesgo a
> la salud o la seguridad, a condiciones
> ambientales o arqueológicas, **la determinación
> final emitida y el permiso otorgado** por la
> Oficina de Gerencia de Permisos, **por el Municipio
> Autónomo con Jerarquía de la I a la V** o por el
> profesional autorizado, **deberá ser revocado. La
> estructura se podrá modificar, conservar o
> demoler, sólo después de que un tribunal
> competente así lo determine y siguiendo con el
> procedimiento judicial establecido en las secs.
> 9024 a 9024e de este título, además de cumplir
> con el debido proceso de ley**.
>
> **Además, se dispone que bajo ninguna
> circunstancia, una determinación final será
> suspendida, sin mediar una autorización o mandato
> judicial de un tribunal competente *o* el foro
> correspondiente, en estricto cumplimiento con el
> debido proceso de ley**. Las disposiciones de esta
> sección no crearán un precedente reclamable por
> terceros ajenos a la propiedad objeto del
> permiso". 23 LPRA sec.9019i (Énfasis nuestro).

Precisa señalar que el citado artículo fue enmendado
mediante el Art. 45 de la Ley Núm. 151-2013, *supra*, y se
eliminó la frase *"dicho permiso solamente por la vía
judicial"* al final de la segunda oración del Art. 9.10. Sin
embargo, se mantuvo la disposición relativa a que ninguna

determinación final deberá ser suspendida sin previa autorización de un Tribunal.

Por otro lado, el Art. 14.2 de la Ley Núm. 161-2009, *supra*, dispone el procedimiento a seguir por el Director Ejecutivo de OGPe cuando atiende una querella presentada ante dicha agencia, en la que entre otras cosas, se solicite la revocación de un permiso:

> "*En aquellos casos, en respuesta a una querella tal como la que se describe en el Artículo 14.1 de esta Ley, el Director Ejecutivo tendrá quince (15) días laborables para investigar la misma. **Si el Director Ejecutivo luego de hacer la investigación correspondiente, decide ejercer sus facultades reconocidas en esta Ley, podrá solicitar la revocación del permiso, la paralización de la obra de construcción o la paralización de un alegado uso no autorizado por la Oficina de Gerencia de Permisos, el Profesional Autorizado o los Municipios Autónomos con Jerarquía de la I a la V, siempre que no esté en conflicto con el Artículo 2.3E de esta Ley, para lo cual deberá acudir ante el Tribunal de Primera Instancia para obtener una orden judicial a esos efectos*. No obstante, si el Director Ejecutivo no actúa en el término de quince (15) días laborables aquí dispuesto, el querellante podrá acudir al Tribunal de Primera Instancia a solicitar los remedios antes mencionados. En cualquier caso, el Tribunal de Primera Instancia deberá celebrar vista dentro de un término no mayor de diez (10) días naturales de presentado el recurso y previo a conceder los remedios solicitados, además, deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la presentación de la demanda*". 23 LPRA sec. 9024a (Énfasis nuestro).

Por último, es menester mencionar que la Ley 161-2009, en su Art. 15.1 23 LPRA sec. 9025, requiere, para la puesta en vigor de esta ley, la creación de un Reglamento Conjunto para establecer y aplicar, entre otras cosas, un sistema uniforme de adjudicación; la evaluación y expedición de

determinaciones finales, permisos y recomendaciones relacionados a obras de construcción y uso de terrenos; y, el procedimiento de querellas ante el Director Ejecutivo, las Entidades Gubernamentales Concernidas y los Municipios Autónomos con Jerarquía de la I a la V, según aplique. El Art. 5.2.8 del *Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos del 30 de noviembre de 2010*, Reglamento número 7951 del Departamento de Estado, dispone también que las determinaciones finales y permisos podrán ser revocados por el Tribunal de Primera Instancia, a solicitud del Inspector General de Permisos o de un querellante. Establece, además, que una determinación final no puede ser suspendida sin mediar una autorización o mandato judicial de un tribunal competente o el foro correspondiente.

Cabe mencionar que la Ley Núm. 151-2013, *supra*, eliminó la Oficina del Inspector General; sus facultades fueron transferidas al Director Ejecutivo de la OGPe. En virtud de ello, dicho funcionario debe acudir al Tribunal de Primera Instancia para solicitar la revocación de permisos.

En fin, como se puede apreciar, la Ley Núm. 161-2009, *supra*, y el mencionado Reglamento Conjunto, disposiciones legales de donde surgen algunos de los poderes delegados a los municipios Jerarquía V, no disponen expresamente que OGPe tenga la facultad de revocar un permiso de uso. Por el contrario, y según se establece en las mencionadas piezas

legislativas, la revocación de permisos se encuentra claramente atada a un procedimiento judicial.

En este sentido, como ya mencionamos, el referido estatuto dispone que el Director Ejecutivo de OGPe, luego de realizar la investigación de rigor, puede, entre otras cosas, **solicitar la revocación del permiso ante al Tribunal de Primera Instancia y obtener una orden judicial a tales efectos**, siempre que no esté en conflicto con el Art. 2.3 (E) de la Ley Núm. 161-2009(que dispone que en ciertas instancias -- y a solicitud del municipio cuando se trate de un permiso brindado por el municipio --, el Director Ejecutivo puede ordenar el cierre inmediato de un establecimiento comercial).

Siendo ello así, no puede el gobierno central delegar a un municipio un poder que la agencia en sí no tiene; en este caso el poder de revocar ciertos permisos de uso.

Es, pues, a la luz del marco jurídico antes expuesto que debemos disponer de la controversia ante nuestra consideración.

V.

Como mencionamos anteriormente, en el presente caso, de conformidad con la autoridad delegada, el Municipio Autónomo de Bayamón concedió a la señora Laureano Rivera un permiso para la operación de un *hogar sustituto y de cuido de incapacitados*. Posteriormente, el señor Lázaro Ginart, vecino del lugar, presentó una querella ante la Oficina de

Permisos del Municipio pues estaba inconforme con el uso que se le estaba brindando a la propiedad.

Luego de que la Oficina de Permisos del Municipio realizara la inspección de rigor, y celebrara una vista sobre posible revocación del permiso de uso, determinó que a la propiedad en cuestión se le estaba dando un uso distinto al solicitado. Así las cosas, decidió revocar el permiso de uso otorgado y ordenar el cierre inmediato del establecimiento. Erró la Oficina de Permisos del Municipio al así hacerlo, y la extinta Junta Revisora al confirmar su actuación.

Como ha quedado claramente demostrado, a la luz del ordenamiento vigente antes expuesto, tratándose de un municipio Jerarquía V, el Municipio Autónomo de Bayamón, no tenía la facultad para revocar el referido permiso de uso. Dicha facultad, similar a como ocurre en las agencias del poder ejecutivo que realizan iguales tareas, le corresponde exclusivamente a los tribunales.

De otra parte, y contrario a lo resuelto por el Tribunal de Apelaciones, la Ley Núm. 161-2009, *supra*, no establece instancia alguna en la que un municipio pueda revocar un permiso sin acudir a un tribunal. Más bien, dicha ley expone claramente que cuando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso, o cuando una estructura represente un riesgo para la seguridad, la salud, a condiciones

ambientales o arqueológicas, el permiso deberá ser revocado; aclaramos que dicha revocación también le corresponde a los foros judiciales.[3]

Así pues, a todas luces, los poderes y facultades transferidos mediante el Convenio de Transferencia al Municipio de Bayamón, son exclusivamente aquellos que ostenta la OGPe. En este caso la facultad es de conceder permisos, no de revocarlos.

Un Municipio no puede, sin mandato legislativo a esos fines, tener más facultades que las que tiene la agencia que delega el poder. En este caso, el Municipio de Bayamón, posee como máximo los poderes que se le otorgan a la OGPe en lo relacionado a la aprobación y revocación de permisos de uso.

VI.

Por los fundamentos antes expuestos, y por entender que el Municipio Autónomo de Bayamón carece de facultades para revocar el permiso de uso en cuestión, previamente otorgado a favor de la señora Laureano Rivera, revocamos la determinación del Tribunal de Apelaciones y devolvemos el

---

[3] Aclaramos que esta determinación no se extiende a los permisos condicionales que se otorgan en virtud del Art. 8.15 de la Ley Núm. 161-2009(23 LPRA sec. 9018n). Dicho artículo concede a la OGPe, a los Municipios Autónomos con Jerarquía de la I a la V y a los Profesionales Autorizados, la facultad de otorgar permisos de uso condicionados a individuos (serán considerados individuos, microempresarios o pequeñas y medianas empresas y que podrán cualificar para la obtención de este permiso, serán todas aquellas empresas o individuos con cincuenta (50) empleados o menos, y que a tenor con esta Ley cumplan con los parámetros de PYMES). Estas entidades pueden otorgar permisos de uso inmediato condicionados a que en un término de seis (6) meses se cumplan con los requisitos que al momento de la solicitud la persona solicitante no haya podido cumplir. En caso de que la persona que solicitó el permiso no cumpla con los requisitos dentro del término, *el permiso quedará revocado*.

caso a la Oficina de Permisos del Municipio para que continúe los procedimientos a tenor con lo aquí resuelto.

Se dictará sentencia de conformidad.


Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Widralee Laureano

    Recurrido

      v.                 CC-2015-030       *Certiorari*

Municipio Autónomo de Bayamón    Cons. CC-2015-055

    Peticionario


SENTENCIA

En San Juan, Puerto Rico, a 22 de febrero de 2017.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, y por entender que el Municipio Autónomo de Bayamón carece de facultades para revocar el permiso de uso en controversia en el presente caso, y previamente otorgado a favor de la señora Laureano Rivera, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso a la Oficina de Permisos del Municipio para que continúe los procedimientos a tenor con lo aquí resuelto.

Notifíquese inmediatamente por fax, teléfono, correo electrónico y por la vía ordinaria.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres está inhibido.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo