ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JUDITH SOLER BECHARA DE RAMOS; ISABEL RAMOS SOLER; IVAN RAMOS SOLER; TERESITA RAMOS SOLER; MARÍA JUDITH RAMOS SOLER<br><br>Recurrentes<br><br>v.<br><br>LUISA 57, LLC; PRISMA ENGINEERING, LLC<br><br>Recurrido | **KLRA202400517** | *REVISIÓN ADMINISTRATIVA* procedente de Oficina de Permisos del Municipio de San Juan<br><br>Caso Núm.: 2023-506620-CUB-009706<br><br>Sobre: Consulta de Ubicación y Variaciones en el caso |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y el Juez Monge Gómez[1].

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 5 de diciembre de 2024.

Comparece ante este foro, Judith Soler Bechara de Ramos, Isabel Ramos Soler, Iván Ramos Soler, Teresita Ramos Soler, y María Judith Ramos Soler (en conjunto, "los recurrentes") y solicitan que revisemos una *Resolución* emitida por la Oficina de Permisos del Municipio de San Juan (Municipio), notificada el 22 de agosto de 2024. Mediante el referido dictamen, el Municipio aprobó la solicitud de consulta de ubicación presentada por Prisma Engineering, LLC (PRISMA), en representación de Luisa 57, LLC (en conjunto, "parte recurrida").

Por los fundamentos que exponemos a continuación, **CONFIRMAMOS** la *Resolución* recurrida.

### I.

---

[1] En virtud de la Orden Administrativa OATA-2024-132, se designa al Hon. José J. Monge Gómez, en sustitución del Hon. Juan R. Hernández Sánchez.

El 5 de octubre de 2023, la Sra. Dagmar Salort Jurado, representante autorizada de PRISMA, presentó ante el Municipio un *Memorial Explicativo – Consulta de Ubicación*.[2] Surge del *Memorial Explicativo*, que buscaban remodelar una estructura residencial de cinco (5) plantas, para rehabilitarla al uso de un hotel de sesenta y cuatro (64) habitaciones en la Calle Luisa #57, Sector Condado, Santurce. La descripción del proyecto incluía en la "Planta Piso" el área de recepción, restaurante con barra, sala de reuniones, baños públicos, área de comedor, baños de empleados y cuarto de mantenimiento; en la "Planta Primera, Segunda, Tercera y Cuarta" estarían las 64 habitaciones sencillas; y en la "Plaza Azotea" el gimnasio, barra, cocina y piscina.

En cuanto al estacionamiento, PRISMA indicó que la propiedad tenía quince (15) espacios a nivel terreno, además, que contaban con un lote ubicado en la colindancia norte. Añadieron que, la propuesta no conllevaba un impacto ambiental significativo, puesto que, buscaban remodelar una estructura existente. No obstante, sostuvieron que habían radicado para evaluación de la agencia concerniente, y esta había sido aprobada por la exclusión categórica #13.[3]

Según surge del expediente, el 23 de abril de 2024, los recurrentes presentaron una *Solicitud de Intervención*. El 2 de mayo de 2024, el Municipio notificó una *Resolución sobre Intervención*,[4] mediante la cual la declaró *Ha Lugar*.

---

[2] *Memorial Explicativo – Consulta de Ubicación*, págs. 20-35 del apéndice del recurso.
[3] *Certificación de Cumplimiento Ambiental por Exclusión Categórica*, págs. 14-16 del apéndice del recurso.
[4] *Resolución sobre Intervención*, págs. 329-331 del apéndice del recurso.

Luego de varios trámites procesales, el 24 de abril de 2024, el Municipio celebró una vista pública sobre la referida consulta de ubicación.

Como parte de la evaluación del caso, el Municipio requirió información adicional, por lo que, los recurridos sometieron varios memoriales explicativos y documentos. Entre ellos, el 26 de abril de 2024, presentaron una *Consulta de Ubicación – Memorial Explicativo Enmendado*.[5] En esencia, indicaron que el proyecto contaba con dieciséis (16) espacios de estacionamientos dentro de la propiedad. Además, contaban con treinta (30) estacionamientos provistos por Valera Parking Services. Finalmente, solicitaron una variación en el: (1) Uso de Hotel con Restaurante y Barra, (2) Patio Frontal y (3) Estacionamientos vía excepción. Para justificar las variaciones, presentaron los siguientes argumentos:

1. La variación solicitada es una razonable y de ninguna manera afectará adversamente la comunidad ni la infraestructura que sirve al sector.

2. El comportamiento del sector es uno mixto residencial y comercial-turístico por lo que el uso propuesto es cónsono con los distritos colindantes y usos actuales de las propiedades vecinas.

3. Existe en el sector una variedad de propiedades que ostentan una calificación residencia y su uso es comercial sin mayores perjuicios.

4. La estructura lleva desocupada sobre 15 años y a pesar de las gestiones de los dueños en lograr rehabilitar la propiedad los altibajos de la economía local han sido un gran obstáculo durante todos estos años.

5. El no tener la propiedad habilitada contribuye negativamente al aumento de roedores, invasión de una enorme cantidad de palomas y otros animales que pudieran afectar la salud y bienestar de la comunidad.

---

[5] *Memorial Explicativo,* págs. 311-326 del apéndice del recurso.

6. Rehabilitar esta estructura brindará un mejor valor a las propiedades cercanas.

7. La remodelación se realizará dentro de la huella de la estructura existente.

8. La estructura no está incluida como valor histórico o cultural, tampoco ubica en área con riego a deslizamientos, derrumbe o marejadas, sensitivamente ecológicas.

9. La rehabilitación de la propiedad proveerá tranquilidad a los vecinos ya que al estar ocupada y en vigilancia 24/7 se controla el acceso de personas ajenas a la propiedad y a la comunidad.

10. Como parte de la evaluación del proyecto se ha consultado a las agencias y el municipio con el fin de atender los asuntos relacionados a las facilidades públicas para asegurar la disponibilidad de infraestructura y servicios esenciales para el proyecto y la comunidad.

11. Por su parte la parte adquiriente de esta propiedad tiene amplia experiencia en la industria de la hospedería local y en este sector por lo que el proyecto propuesto contará con todas las condiciones para que los huéspedes locales y extranjeros disfruten de forma segura y tranquila del comercio local y los atractivos que ofrece el Condado.

12. La presencia de una estructura abandonada no solo disminuye el calor de las propiedades circundantes, sino que también se convierte en un estorbo público.

13. La estructura ha estado construida durante más de 70 años y ha permanecido desocupada por más de 15-20 años. Actualmente, a través de este proyecto de rehabilitación, existe una posibilidad concreta de que la propiedad recupere su valor tangible en el sector.

El 7 de mayo de 2024, varios colindantes y residentes de la Ave. Magdalena, Calle Luisa y Calle Piccioni presentaron una *Carta*, en la cual solicitaron que fuera denegado el permiso de uso para establecer el hotel en controversia.[6] Entre las razones se encontraban: ruido, sobrecarga de tubería y alcantarillas, problemas de electricidad, -al generar más demanda eléctrica-, y el exceso de vehículos.

---

[6] Véase, págs. 333-343 del apéndice del recurso.

En la misma fecha, la parte recurrida presentó un *Memorial Explicativo-Información Adicional en Vista Pública*.[7] En síntesis, mencionaron los siguientes asuntos solicitados en la vista pública sobre el proyecto de remodelación: (1) enmienda al anuncio para la continuación de la vista pública; (2) actividades de demolición; (3) variación en estacionamiento; (4) estudio estructural; y (5) acceso a la propiedad.

Al día siguiente, los recurrentes presentaron un reclamo sobre el *Memorial Explicativo*. En el cual indicaron que, la parte recurrida presentó información falsa, con la intención de obtener el permiso. Alegaron que, el estacionamiento que pretendían utilizar no era propiedad de Valera Parking Services, puesto que, había sido vendido a otra corporación. A su vez, reiteraron los problemas de la infraestructura del agua y alcantarillados, electricidad y tránsito.

Luego de la vista pública celebrada el 15 de mayo de 2024, y en respuesta a la solicitud de información sobre el alquiler de los espacios de estacionamiento, requerido por el Municipio, el 27 de mayo de 2024, PRISMA presentó un *Memorial Explicativo-Post Vista de 15 de mayo de 2024*.[8] En este, informaron que Valera Parking Services proveería otro lote destinado a prestar los servicios.

El 29 de mayo de 2024, los recurrentes presentaron su inconformidad sobre el proyecto.[9] En síntesis, alegaron que los recurridos de manera atropellada solicitaron alterar el permiso de estacionamiento, para

---

[7] *Memorial Explicativo-Información Adicional en Vista Pública*, págs. 347-354 del apéndice del recurso.
[8] *Memorial Explicativo-Post Vista de 15 de mayo de 2024*, págs. 409-410 del apéndice del recurso.
[9] Véase, págs. 426-434 del apéndice del recurso.

ubicar los espacios necesarios en otro solar, ubicado en la Calle Condado #70. Sostuvieron que, dicha solicitud no cumple con el Reglamento Conjunto, ya que el solar tiene espacio para 21 estacionamientos, y ellos necesitaban espacio para 44 vehículos; además, de no cumplir con la distancia que exige el reglamento. De otra parte, esbozaron que no cumplen con la Sección 8.5.3.4 del Reglamento Conjunto, al no tener el espacio adecuado para el área de carga y descarga. Finalmente, arguyeron que los proponentes de Luisa Condado Project no son los dueños de la propiedad, por lo que, no tienen "*standing*" para solicitar las variaciones y permisos.

El 16 de julio de 2024, la Oficial Examinadora rindió el *Informe de Vista Pública*, en el cual favoreció la aprobación de la consulta de ubicación, con las variaciones.[10]

Así las cosas, el 22 de agosto de 2024, el Municipio notificó una *Resolución*, mediante la cual aprobó y autorizó el uso y demás variaciones solicitadas por la parte recurrida.[11] En la misma, enumeraron las siguientes determinaciones de hechos:

1. La propiedad ubica en la Calle Luisa #57 del Sector Condado en el Barrio Santurce del término municipal de San Juan. El solar consta de una cabida superficial de 1,230 metros cuadrados. De acuerdo con la Hoja 3C y 3D con vigencia del 13 de marzo de 2003, el solar donde ubica la propuesta está dentro de los límites de un distrito R y según el Mapa del CRIM la parcela está identificada con el número de catastro 040-039-025-24. La estructura está dentro de zona inundable, Zona AE, de acuerdo con el mapa de FIRM hoja 72000C0355J del 13 de abril de 2018.

2. La acción propuesta, según memorial explicativo, informa lo siguiente: El proyecto consiste en la remodelación de una estructura existente de cinco (5) plantas que se propone rehabilitar y remodelar para uso

---

[10] *Informe de Vista Pública*, págs. 435-442 del apéndice del recurso.
[11] *Resolución de Aprobación a Consulta de Ubicación*, págs. 450-462 del apéndice del recurso.

de un hotel de sesenta y cuatro (64) habitaciones sencillas, restaurante, área de piscina, cuartos de lavado y mantenimiento, baños y estacionamientos para uso de los huéspedes.

3. Los usos de la estructura se desglosan de la siguiente manera:

**Primera Planta (A nivel de piso)** | área de recepción, restaurante con barra, sala de reuniones, área de comedor, cuarto de mantenimiento, baños comunes y para empleados.

**Segunda, Tercera, Cuarta y Quinta Planta** | 64 habitaciones sencillas - 16 hab/planta

**A nivel de Azotea** | gimnasio, barra, cocina, piscina y baños.

4. La propiedad cuenta con dieciséis (16) espacios para estacionamientos a nivel del terreno dentro de la propiedad; y mediante arrendamiento en un lote aledaño, se proveen 40 espacios adicionales. El contrato de arrendamiento es con Valera Parking con fecha del 1 de abril del 2024. El estacionamiento ubica en la Ave. Magdalena a menos de 200 metros de distancia de la propiedad en cumplimiento con las disposiciones del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios (adelante "Reglamento Conjunto") de acuerdo con la sección 8.5.1.1 inciso C. En la continuación de la Vista Pública, alguno vecinos presentaron inquietudes en cuanto al contrato y existencia de los espacios de estacionamientos. Posteriormente, el Sr. Rafael bautista Valera, mediante Declaración Jurada fechada el 24 de mayo de 2024, certificó la disponibilidad de espacios para 40 vehículos y su facultad legal para disponer de los mismos. El Proponente, mediante comunicación de 27 de mayo de 2024 aclaró que el lote a ser utilizado estará ubicado en el #70 de la Ave. Condado, a 186 metros del proyecto. Además, como parte de los servicios del hotel a sus huéspedes, contarán con personal para servicio de "valet parking".

5. El sector cuenta con facilidades de energía eléctrica, agua potable, alcantarillado sanitario, telecomunicaciones, accesos para tráfico vehicular y peatonal. Se consultó a la Autoridad de Acueductos y Alcantarillados quien informa, mediante comunicación del 28 de noviembre del 2023 (2023-506620-SRI-073780), que existen las facilidades para brindar los servicios de agua potable y sanitarios e informan sobre los puntos de conexión. LUMA Energy, mediante comunicación del 5 de octubre de 2023 (2023-506620-SR1-073784), notifica que existen las facilidades para proveer energía eléctrica al proyecto e informa el punto de conexión. La Compañía de Turismo, mediante

comunicación del 3 de octubre del 2023 (2023-506620-SRU-073187), recomienda el proyecto y requiere que al menos tres habitaciones estén completamente equipadas para personas con impedimentos físicos, entre otros requerimientos.

6. Obra en el expediente digital una solicitud de intervención (2024-SIN-300136). Dicha solicitud de intervención fue declarada Ha Lugar, mediante *Resolución sobre Solicitud de Intervención* de 2 de mayo de 2024.

7. El 7 de mayo de 2024 la Oficina de Tránsito del Departamento de Operaciones y Ornato del MASJ, condicionó el endoso de acceso vehicular, siempre y cuando se aprueben mediante variación los tamaños de los accesos vehiculares propuestos y se instale el mobiliario urbano (bolardos) recomendado.

8. El caso se vio en vista pública el 24 de abril del 2024, y continuación de esta el 15 de mayo del 2024, presidida por la Lcda. Rosemary Borges Capó como Oficial Examinadora.

9. La Oficial Examinadora rindió su Informe el 16 de julio de 2024.

10. Durante el proceso de Vista Pública se recogieron los siguientes argumentos:

    i. El Proponente: describió el proyecto a manera de introducción, endosos, variaciones y el cumplimiento con los requisitos de presentación de la consulta. Detalló que no se añadirán plantas adicionales en la estructura.

    ii. Vecina colindante expuso que el Hotel colindará con su propiedad, que traerán ruidos excesivos; que no cuentan con los estacionamientos necesarios; que la calle se inunda cuando llueve y que el Hotel agravaría la situación. Actualmente existen problemas con el servicio eléctrico en el sector por lo que le preocupa la operación de una planta eléctrica en la colindancia de su propiedad. Le preocupa que los taxis y los "uber" se ubiquen en las aceras afectando el tránsito.

    iii. Otros asistentes expresaron que el proyecto no podrá cumplir con las variaciones, se cuestionó la facultad de la compañía Valera para el alquiler de los estacionamientos, cuestionó la clasificación del uso del lugar; no hay estacionamientos en el lugar, las actividades que se realizan en el sector afectan su propiedad pues suelen estacionarse frente a la misma. Le preocupan futuros trabajos de demolición en la propiedad.

iv. Vecino en oposición al restaurante y barra debido a los olores y ruido que producen, se afectará el tránsito.

v. Vecina del lugar, que está a favor del proyecto, expresó que no todos los visitantes tendrán vehículos, muchos serán extranjeros, existen otros restaurantes en la zona. Alegó que la calle se inundó con el Huracán María, pero no pasa en la actualidad. Alegó que lleva 50 años residiendo en el lugar y que afecta más a la comunidad tener la estructura cerrada que rehabilitada y abierta. Así, además, el corredor que vendió el edificio que se propone arreglar y está a favor de su desarrollo. Es residente del lugar y las inundaciones en la calle son en otra área, no frente al proyecto. Reconoce que en Condado es difícil encontrar estacionamientos, pero no por eso se opone al proyecto. Nunca ha tenido problemas con la electricidad ni con el agua. Existen muchos edificios abandonados y está a favor de mejorarlos.

vi. El Proponente aclaró que el proyecto no contempla demoliciones y discutió el asunto de los estacionamientos.

vii. El Centro Urbano de Condado recomendó favorable la consulta, siempre y cuando el Proponente cumpliera con la documentación requerida. Además, pidió reconsiderar sus comentarios a la luz de lo discutido durante la vista. Se le concedió hasta el 5 de junio de 2024 para someter la nueva posición del Centro Urbano de Condado.

11. El Proponente solicita las siguientes variaciones:

    i. Uso – Hotel con Restaurante y Barra.

    ii. Patio Frontal – De un (1) metro a cero (0) para el 50% del patio frontal.

    iii. Estacionamientos Vía Excepción – 40 estacionamientos en otro predio a 186 metros del proyecto.

    iv. Ancho de Accesos Vehiculares – El ancho en ambos accesos existente son de 12'-2 3/8" y 14'-45/8".

12. Justificación a las variaciones solicitadas:

    i. La variación solicitada es una razonable l y de ninguna manera afectara adversamente la comunidad ni la infraestructura que sirve al sector.

    ii. El comportamiento del sector es uno mixto residencial y comercial-turístico por lo

que el uso propuesto es cónsono con los distritos colindantes y usos actuales de las propiedades vecinas.

iii. Existen en el sector una variedad de propiedades que ostentan una calificación residencial y su uso es comercial sin mayores perjuicios.

iv. La estructura lleva desocupada sobre 15 años y a pesar de las gestiones de los dueños en lograr rehabilitar la propiedad los altibajos de la economía local han sido un gran obstáculo durante todos estos años.

v. El no tener la propiedad habilitada aporta negativamente al aumento de roedores, invasión de una enorme cantidad de palomas y otros animales que pudieran afectar la salud y bienestar de la comunidad.

vi. Rehabilitar esta estructura brindará un mejor valor a las propiedades cercanas.

vii. La remodelación se realizará dentro de la huella de la estructura existente.

viii. La estructura no está incluida como valor histórico o cultural, tampoco ubica en área con riesgo a deslizamientos, derrumbe o marejadas, sensitivamente ecológicas.

ix. La rehabilitación de la propiedad proveerá tranquilidad a los vecinos ya que al estar ocupada y en vigilancia 24/7 se controla el acceso de personas ajenas a la propiedad y a la comunidad.

x. Como parte de la evaluación del proyecto se ha consultado a las agencias y el municipio con el fin de los asuntos relacionados a las facilidades públicas para asegurar la disponibilidad de infraestructura y servicios esenciales para el proyecto y la comunidad.

xi. Por su parte, la parte adquiriente de esta propiedad tiene amplia experiencia en la industria de la hospedería local y en este sector por lo que el proyecto propuesto contará con todas las condiciones para que los huéspedes locales y extranjeros disfruten de forma segura y tranquila del comercio local y los atractivos que ofrece el Condado.

xii. La propuesta de un "roof top bar" en la azotea del edificio se ajustará a las exigencias del Código de Orden Público Municipal; no tienen previsto incluir música en vivo ni otro elemento que pueda perturbar la paz y tranquilidad de los vecinos.

xiii. El uso propuesto como hotel es cónsono con la tendencia del sector y los propósitos del RCEC de lograr cierta estabilidad en la evolución física del área turístico-residencial, preservando así la variedad deseada, promoviendo la actividad turística, pero armonizando a su vez con los residentes.

xiv. Con relación a la solicitud de instalación de bolardos presentada por la Oficina de Tránsito del MSJ, la parte Proponente indicó que este tipo de mobiliario urbano pudiera presentar un asunto de seguridad tanto en el tráfico vehicular como en la salida peatonal en casos de emergencias. Aun así, de ser requerido, estarían en disposición de instalarlos, o la siembra de vegetación en su lugar.

13. La Oficial Examinadora rindió su *Informe* el 16 de julio de 2024, recomendando favorablemente el proyecto.

14. Obran en el expediente todos los documentos requeridos para el proceso de radicación y evaluación de la consulta de ubicación. Además, el proyecto cumplió con el proceso ambiental mediante certificado de Exclusión Categórica, emitida el 28 de agosto de 2023, bajo caso 2023-506620-DEC-124417.

15. A continuación, se presenta la tabla de parámetros cumplimentada con los datos provistos por el proyectista, por medio de los planos anejados al expediente del caso:

| PARÁMETRO | CAPÍTULO | PERMITIDO | EXISTENTE | PROPUESTO | CUMPLE |
|---|---|---|---|---|---|
| Usos | RCEC 2.0 | Residencial | Ninguno | Hotel (64 hab) | NO |
| Altura/Niveles (metros) | RCEC 3.06.03 | Existente | 18.3 | 3.5 / 18.3 | SI |
| Tamaño del Solar (mc) | RCEC 3.02 | 450 | 1,306 | 1,306 | SI |
| Área de Ocupación | RCEC 3.04.02 | 50% | 34% = 445.1 mc | 36% = 475.2 mc | SI |
| Área Bruta de Piso (mc) | RCEC 3.05.01 | 300% | 170% = 2,225 | 206% = 2,696 mc | SI |

| | | | | | |
|---|---|---|---|---|---|
| Densidad poblacional | RCEC 3.03 | 29.6 UVB | Ninguno | 25.6 UVB | SI |
| Unidad Básica de Vivienda (UVB) | RCEC 3.03.01 | 29.6 UVB | Ninguno | 25.6 UVB | SI |
| Patio Delantero (metros) | RCEC 3.06.01 | 3.0 | 5.51 | 0 | NO |
| Patio Lateral Derecho (metro) | RCEC 3.06.02 | 3.0 | 4.12 | 4.12 | SI |
| Patio Lateral Izquierdo (metro) | RCEC 3.06.02 | 3.0 | 3.91 | 3.91 | SI |
| Patio Posterior (metros) | RCEC 3.00 | 3.0 | 9.69 | 9.69 | SI |
| Estacionamientos | RC 8.5.2 | 46 | 16 | 46 | NO |
| Área de Carga y Descarga | RC 8.5.3 | 1 | 0 | 1 | SI |
| Verja | RCEC 3.06.1 | .75 @ 1m (frente) | 0 | .75 @ 1m (frente) | SI |

Basado en la relación de hechos y el análisis correspondiente, el Municipio aprobó y autorizó la consulta. A su vez, añadió, que no legalizaban ninguna otra variación, obra de construcción y/o permisos de uso que no hayan sido autorizados. Asimismo, que debían cumplir con ciertos requerimientos, entre ellos: debían proveer estacionamientos; no autorizaban la música al aire libre o en vivo; contar con los endosos de ACT/DTOP y AAA; cualquier cambio al proyecto debían pasar nuevamente por el proceso de consulta; entre otras recomendaciones.

En desacuerdo con la determinación, el 20 de septiembre de 2024, los recurrentes presentaron el recurso de revisión que nos ocupa y señalaron los siguientes errores:

> ERRÓ LA OFICINA DE PERMISOS DEL MSJ AL APROBAR ARBITRARIAMENTE UNA VARIACIÓN EN USO PARA CONVERTIR 13 UNIDADES DE APARTAMENTOS A 54 HABITACIONES DE HOTEL EN LA ZONA RESIDENCIAL DE CONDADO, SIN EXISTIR LAS CIRCUNSTANCIAS EXCEPCIONALES REQUERIDAS.
>
> ERRÓ LA OFICINA DE PERMISOS DEL MSJ AL APROBAR LA VARIACIÓN PARA ESTACIONAMIENTOS EN UN LOTE FUERA DE LA PROPIEDAD, SIN QUEDAR FORMALIZADO MEDIANTE GRAVAMEN O SERVIDUMBRE, Y SIN QUE EXISTAN LOS ESPACIOS MÍNIMOS DE ESTACIONAMIENTOS REQUERIDOS.
>
> ERRÓ LA OFICINA DE PERMISOS DEL MSJ AL APROBAR LAS VARIACIONES, SIN RECONOCER LOS PERJUICIOS A LOS RESIDENTES Y PROPIETARIOS DE LA ZONA RESIDENCIAL.
>
> ERRÓ LA OFICINA DE PERMISOS DEL MSJ AL APROBAR LA CONSULTA DE UBICACIÓN CON

VARIACIONES SIN LA APROBACIÓN DE UN DOCUMENTO AMBIENTAL.

ERRÓ LA OFICINA DE PERMISOS DEL MSJ AL APROBAR LAS VARIACIONES A UN PROPONENTE SIN LEGITIMACIÓN ACTIVA.

El 21 de octubre de 2024, el Municipio presentó su *Alegato en Oposición de la Parte Recurrida, Municipio de San Juan*, mediante el cual sostuvo argumentos en contra de lo planteado por la parte recurrente.

De igual forma, Luisa 47 presentó su oposición al recurso de revisión judicial instado por los recurrentes.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley." *Simpson y otros v. Junta de Titulares*, 2024 TSPR 64, 213 DPR ___ (2024*); Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ____ (2024); *Comisión Ciudadanos v. G.P. Real Prop.*, 173 DPR 998, 1015 (2008). De esta forma, se vela porque los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias." *Íd.*

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los

méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal." Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA sec. 9672; *Simpson y otros v. Junta de Titulares*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006). La LPAU es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); Ley 38-2017, *supra*, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Transporte Sonell, LLC v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. Bella Detail Group, Inc.,* 2024 TSPR 70, 213 DPR___ (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra; *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una

presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. Sin embargo, aunque los tribunales revisores están llamados a conceder deferencia amplia a las determinaciones de las agencias administrativas, tal norma no es absoluta. *Transporte Sonell, LLC v. Junta de Subastas*, supra; *Otero Rivera v. Bella Detail Group, Inc.*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra; *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y* otro, supra, pág. 819.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. No obstante, los tribunales deberán darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. Ley 38-2017, *supra*, sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627.

En esencia, ante una revisión judicial, el tribunal tomará en consideración lo siguiente: (a) presunción de corrección; (b) especialización del foro administrativo; (c) no sustitución de criterios; (d) deferencia al foro administrativo; y (e) que la decisión administrativa sólo se dejará sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial del expediente que constituyen un abuso de discreción.

**-B-**

La Ley Núm. 161-2009 conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada, 23 LPRA sec. 9011 *et seq.* (Ley Núm. 161-2009), fue promulgada con el fin de establecer el nuevo

marco legal y administrativo que habría de guiar la solicitud, evaluación, concesión y denegación de permisos vinculados al desarrollo de obras de construcción y otras actividades relacionadas por parte del Gobierno de Puerto Rico. Conforme surge de la exposición de motivos, esta tiene como objetivo transformar el sistema de permisos de Puerto Rico de modo que el mismo sea uno más transparente, ágil, confiable y eficiente. Bajo esta legislación fue creada la Oficina de Gerencia de Permisos (OGPe) como el organismo administrativo encargado de emitir determinaciones finales y permisos, licencias, inspecciones, certificaciones y cualquier otra autorización o trámite que sea necesario. Por ello, la Ley Núm. 161-2009, *supra*, le transfirió a la OGPe las facultades que antes tenían numerosas entidades gubernamentales, entre ellas, la Administración de Reglamentos y Permisos de Puerto Rico (ARPe).

De otra parte, el Artículo 2.20 de la Ley Núm. 161-2009, establece que se transferirá de la ARPe a la OGPe, cualquier facultad función ejercida por el Administrador, por la ARPe o por la Junta de Planificación que no hubiere sido transferida o encomendada expresamente por ley, a menos que resulte incompatible con esta Ley, las disposiciones de la ley orgánica de la ARPe, o cualquier otra ley posterior que disponga lo contrario. 23 LPRA sec. 9012s. A su vez, el Artículo 2.21 de la precitada Ley, dispone que todos los procedimientos en los que la ARPe sea parte y que estén en espera de resolución ante los tribunales o foros administrativos continuarán a través del Director Ejecutivo de la OGPe "hasta su resolución final al amparo

de las disposiciones bajo las cuales se hubiesen iniciado." 23 LPRA sec. 9012t.

La Ley Núm. 161-2009 también estableció que los municipios autónomos con jerarquías de la I a la V podían mediante convenios a esos efectos, recibir por delegación funciones que de ordinario pertenecían a la jurisdicción de las referidas agencias gubernamentales, incluso la Junta de Planificación, y la ARPe.

En lo aquí pertinente, el Artículo 2.5 de la Ley Núm. 161-2009, 23 LPRA 9012d, dispone:

> A partir de la fecha de vigencia de esta Ley, la Oficina de Gerencia de Permisos, a través de su Secretario Auxiliar, los Profesionales Autorizados, Inspectores Autorizados, cualquier otro facultado en la Ley o a quien el Secretario Auxiliar de la Oficina de Gerencia de Permisos delegue tal facultad, según aplique, emitirán determinaciones finales, permisos, licencias, certificaciones, entre éstas, las de prevención de incendios, autorizaciones y cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en Puerto Rico según se disponga en el Reglamento Conjunto de Permisos, certificados de salud ambiental relacionados directa o indirectamente al desarrollo y el uso de terrenos o estructuras que, previo a la aprobación de esta Ley, eran evaluados y expedidos o denegados por las Entidades Gubernamentales Concernidas al amparo de sus leyes orgánicas u otras leyes especiales y que serán incluidos en el Reglamento Conjunto de Permisos. De igual forma, los Municipios Autónomos con Jerarquía de la I a la V, conforme a lo establecido en el Artículo 1.3 y 18.10 de esta Ley, podrán emitir determinaciones finales y permisos. Aquellas solicitudes de permisos, certificaciones o licencias contempladas en los Reglamentos de las Entidades Gubernamentales Concernidas pasarán a ser evaluadas por la Oficina de Gerencia de Permisos y por los Profesionales Autorizados, según aplique y sea establecido en el Reglamento Conjunto, incluyendo aquellas dirigidas a la ubicación o parámetros del uso. En el caso de la Directoría de Excavaciones, Demoliciones y Tuberías del Departamento de Transportación y Obras Públicas, la Oficina de Gerencia de Permisos servirá de centro de presentación de la notificación requerida. La Oficina de Gerencia de Permisos o la Junta Adjudicativa según sea el caso evaluará y emitirá licencias y determinaciones finales para las consultas de variación en uso, construcción, y consultas de ubicación, incluyendo las de mejoras públicas y las de impacto regional o suprarregional. Los cambios de calificación o recalificación directa de solares y las de

transacciones de terrenos públicos, serán evaluadas por la Junta de Planificación, quien emitirá la determinación final.

Sobre la evaluación, concesión o denegación de determinaciones finales o permisos, el Artículo 8.1 de la Ley Núm. 161-2009, dispone que cualquier persona que interese solicitar permisos, recomendaciones, licencias o certificaciones relacionados al desarrollo y uso de terrenos en Puerto Rico o cualquier otra autorización o trámite necesario, podrá así hacerlo ante la OGPe, a nivel central o regional, ante los Municipios Autónomos con Jerarquía I a V o mediante un Profesional Autorizado, según aplique. 23 LPRA Sec. 9018. Igualmente, el artículo establece que las solicitudes incluirán aquellas establecidas en el *Reglamento Conjunto de Permisos*, incluyendo entre otras, los permisos únicos.[12]

De igual manera, y sobre los permisos expedidos, el Artículo 9.10 de la Ley Núm. 161-2009, dispone sobre la presunción de corrección y legalidad de las determinaciones finales y permisos expedidos por la OGPe, los Municipios Autónomos con Jerarquía de la I a V y por los Profesionales Autorizados. 23 LPRA sec. 9019i.

Conforme la Ley Núm. 161-2009, fue aprobado el *Reglamento Conjunto Para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*. Este reglamento tiene el propósito de detallar el sistema unificado de información sobre el desarrollo y uso de terrenos,

---

[12] Para efectos de la Ley Núm. 161-2009, "permiso único" se refiere al permiso para el inicio o continuación de la operación de un negocio, construcción y/o actividad incidental al mismo en el que se consolida permisos, licencias, autorizaciones o certificaciones, el que podrá ser expedido por la OGPe o los Municipios Autónomos con Jerarquía I a V, conforme dispone el Capitulo VIII del estatuto.

conforme la política pública esbozada en la Ley Núm. 161-2009.

Sobre el "permiso único", el Reglamento Conjunto del 2023 en su Sección 3.7.1.1.(c) dispone que este podrá ser expedido por la OGPe, los Municipios Autónomos con Jerarquía de la I a la III y los profesionales autorizados.

**-C-**

La Ley Núm. 81-1991, mejor conocida como la *Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico*, 21 LPRA sec. 4001, et seq.,[13] se instrumentó con el propósito de "iniciar un proceso de renovación político-administrativa del gobierno municipal con la finalidad de fomentar una mayor autonomía y la descentralización gubernamental de Puerto Rico. *Laureano v. Mun. de Bayamón,* 197 DPR 420 (2017). Mediante el referido estatuto, se amplió el ámbito de facultades y funciones de los municipios, se autorizó la transferencia de competencias de planificación y reglamentación de sus territorios y se autorizó la delegación de otras materias de la competencia del Gobierno Central. *Íd.,* citando a *Gobierno Ponce v. Caraballo,* 166 DPR 723, 731 (2006) y otros.

A los fines de poner en vigor las facultades delegadas por la Ley Núm. 81-1991, tal estatuto exige que el Municipio tenga una Oficina de Permisos propia. Una vez creada la referida oficina, se otorga un convenio entre el Municipio y el Gobierno Central, que, además de especificar las facultades transmitidas al municipio,

---

[13] La Ley Núm. 81-1991, aunque pertinente por ser la legislación vigente al momento de los hechos fue derogada por la Ley Núm. 107 de 14 de agosto de 2020, según enmendada.

establecerá las limitaciones en los poderes delegados. *Íd.*

**-D-**

Conforme el poder delegado a los municipios autónomos para adoptar normas relacionadas a su ordenación territorial, el Municipio de San Juan aprobó el Reglamento de Ordenación Territorial del Municipio de San Juan (Reglamento de Ordenación Territorial).[14] Dicha reglamentación es aplicable a todos los terrenos bajo la jurisdicción del mencionado municipio y establece las normas para, entre otras cosas, guiar y controlar el uso, desarrollo y redesarrollo de los límites territoriales del Municipio con el fin de contribuir al mejoramiento social y económico de todos sus habitantes y proteger, defender y conservar sus zonas o sitios de interés turístico. Secc. 1.06 del Reglamento de Ordenación Territorial, *supra*.

La Sección 10.03 del Reglamento de Ordenación Territorial, *supra*, señala que el Distrito de Ordenación Especial del Condado se regirá, a su vez, por lo dispuesto en el Reglamento de Calificación Especial del Condado.[15] No obstante, apunta que la prelación de normas será la establecida en la Sección 1.09 de dicho reglamento que fija el siguiente orden jerárquico:

> [r]especto a determinados inmuebles se seguirán las normas de cada instrumento en el siguiente orden jerárquico:

[14] Véase, Boletín Administrativo Núm. OE-2003-16, para aprobar el *Plan de Ordenación Territorial del Municipio de San Juan* de 13 de marzo de 2003.
[15] Reglamento Núm. 3319 de la Junta de Planificación de 21 de julio de 2017. Por "Distrito de Ordenación Especial" debe entenderse: "[u]n área delimitada por la Junta o el Municipio con el fin de promover el desarrollo integrado y la rehabilitación de la misma tomando en cuenta factores que fomenten la retención y atracción de población, que provean vitalidad económica y propicien el uso más adecuado de los terrenos, así como la creación de un ambiente urbano funcional y estéticamente agradable". *Íd.*

a. Los Distritos Sobrepuestos de este Reglamento prevalecerán sobre los Distritos Subyacentes y la Reglamentación Especial de Santurce, El Condado, y Entrada de la Isleta de San Juan e Isla Grande. En la elaboración y análisis de los Distritos Sobrepuestos se han agrupado y contemplado las recomendaciones, estrategias y normas diseñadas en los Planes Especiales (PET, RIC, ACE) a los fines de simplificar el proceso de evaluación de los proyectos y simplificar el manejo de los documentos. Los Planes Especiales servirán, además, como importantes instrumentos de referencia para los proyectos. El Municipio continuará con la elaboración y perfeccionamiento de los Planes Especiales dentro de un esquema de planificación continua para dirigir sus programas de inversiones y para la actualización y revisión futura de su Plan de Ordenación Territorial, en colaboración estrecha con la Junta de Planificación.

b. Las disposiciones de este Reglamento prevalecerán y se complementarán con las disposiciones de cualquier otro reglamento de planificación o documento en vigor que sea aplicable al caso en particular, excepto en el caso de reglamentación de carácter regional o estatal y/o reglamentación especial a establecerse por virtud de ley. Estos se interpretarán a la luz de los objetivos de este Reglamento, las leyes, ordenanzas municipales, Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico adoptado por la Junta de Planificación.

Por ser la zona del Condado uno de los centros de principal actividad turística en la Isla, la Junta de Planificación promulgó el Reglamento de Calificación Especial del Condado, *supra*, con el propósito de asegurar y fomentar la salud, seguridad, orden, prosperidad y bienestar general de todos los usuarios, y residentes del sector. Secc. 1.02 del Reglamento de Calificación Especial del Condado, *supra*.

Cabe señalar que también es de aplicación el Reglamento Conjunto, *supra*, promulgado al amparo de la Ley Núm. 161-2009, *supra*, el cual contiene —entre otras cosas— lo relativo a la presentación de solicitudes de servicio ante la creación de un nuevo sistema integrado

de permisos en la Isla. Regla 1.1.1 del Reglamento Conjunto, *supra*.

Referente al caso de autos, la Sección 2.02 del Reglamento de Calificación Especial del Condado, *supra*, divide el área del Condado en cinco (5) zonas, de acuerdo a las actividades existentes o que permitirían. Estas zonas son:

- Zona Comercial Turística (CT): se establece para clasificar usos turísticos aquellos usos próximos a estos que apoyan, complementan y/o no socavan el uso turístico. Las actividades en esta zona no deben ofrecer oportunidad para que surjan conflictos o entorpezcan la actividad turística. Esta zona está íntimamente ligada a flujos peatonales.

- Zona Comercial Regional (CRE): se establece para clasificar áreas comerciales cuyo mercado transciende en forma significativa aquel compuesto por su vecindario inmediato. Esta zona está íntimamente ligada con un alto flujo vehicular.

- Zona Residencial (R): se establece para clasificar áreas dedicadas exclusivamente al uso residencial.

- Zona Institucional (INS): se establece para clasificar las iglesias, hospitales y escuelas elementales y superiores actualmente existentes en la zona.

- Zona Pública (P): está conformada por los terrenos propiedad del gobierno, gran parte de ellos destinados al uso recreativo. […] Secc. 2.02 del Reglamento de Calificación Especial del Condado, *supra*.

En la Sección 2.04 dispone los usos permitidos por zona, en la "Tabla 1" de la sección prescribe que está permitido en la Zona Comercial Turística (CT), entre ellos, el servicio de hospedería, el cual incluye hoteles, casa de huéspedes, alojamiento y desayuno, alojamiento suplementario por corto periodo; entre otros usos. No obstante, en la Zona Residencial (R), están permitidos los servicios de hospedería antes mencionados, excepto los hoteles.

De otra parte, la Sección 3 del Reglamento de Calificación Especial del Condado, *supra*, regula las disposiciones sobre las edificaciones. En lo pertinente al caso de epígrafe, la Sección 3.11 establece los requisitos necesarios de estacionamiento, el cual se conformarán de acuerdo al *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo y Uso de Terrenos*. A su vez, el Reglamento de Calificación Especial del Condado, añadió los siguientes requisitos:

- Todas los casas de apartamentos deberán proveer un (1) estacionamiento para visitantes por cada cinco (5) unidades de vivienda básica (u.v.b.) o fracción de las mismas.
- No se permitirá ningún estacionamiento en el patio delantero. Todos los estacionamientos quedarán confinados detrás de la línea de edificación, según establecida en el Plano de Frentes de Edificación (ver ilustración 2). Los mismos no serán visibles desde la acera.

- No se considerará como fundamento para conceder una variación la no existencia de estacionamiento dentro de una pertenencia construida. Todo requisito de estacionamiento será cumplido a cabalidad.

- El estacionamiento fuera de los límites de la propiedad deberá quedar formalizado mediante gravamen o servidumbre sobre el predio que provee estacionamiento inscrito en el Registro de la Propiedad o mediante gravamen preferente sobre el predio que genera la demanda de estacionamiento, fianza o carta de crédito que sentará los términos del permiso para garantizar el pago del arrendamiento de los espacios de estacionamiento.
- Estacionamiento compartido - La Oficina de Gerencia de Permisos (OGPe) o el Municipio de San Juan podrán considerar la utilización de estacionamiento compartido, siempre que se demuestre mediante los correspondientes estudios que los usos operan de forma escalonada y que la capacidad de área de estacionamiento total nunca será menor a la necesidad en horas pico.

En el Capítulo 8.5.1 del Reglamento Conjunto, en lo que respecta a los requerimientos sobre los estacionamientos, establece que:

a. Las áreas de estacionamiento de vehículos de motor requeridas serán provistas dentro de la pertenencia, bien sea el edificio principal, en un edificio accesorio o en un área remanente del solar en que está ubicado o ubicará dicho edificio principal.

b. Mientras no se establezca lo contrario para el distrito en que ubica la propiedad, podrá utilizarse un patio requerido para tales propósitos siempre que no se obstaculice o afecte el tránsito o movimiento de vehículos en los accesos o áreas de viraje de tales áreas de estacionamiento.

c. Al utilizar el solar de acuerdo con las disposiciones de ocupación para el distrito de calificación en que ubique la pertenencia, no se puede proveer el área de estacionamiento en terrenos del solar y se demuestre a la OGPe o el Municipio Autónomo con Jerarquía de la I a la III que su provisión no es factible con relación al proyecto, éste podrá autorizar la provisión de tal área de estacionamiento en otro predio localizado a una distancia de fácil recorrido a pie de no más de doscientos (200) metros del solar, siempre que se haga la dedicación de la totalidad de dicho predio para área de estacionamiento mediante el documento legal correspondiente.

[…].

Asimismo, la Regla 8.5.2 del Reglamento Conjunto, relacionada al diseño y requisitos mínimos de áreas de estacionamiento, en su sección 8.5.2.1 dispone:

a. Las áreas de estacionamiento de vehículos se diseñarán en forma funcional, esto es, para que cualquier vehículo pueda moverse sin que se vea impedido de hacerlo por otros vehículos estacionados, a menos que ello se disponga así en este Reglamento, ni obligado a entrar en el tránsito en retroceso.

b. Estas áreas serán pavimentadas, marcadas, provistas de accesos, tendrán una circulación adecuada para peatones y vehículos y contarán con áreas de siembra.

c. No se permitirá que se utilicen las vías públicas y los accesos a áreas de estacionamiento como áreas de viraje.

[…].

Finalmente, en lo relativo a los espacios necesarios para carga y descarga el Reglamento Conjunto en su Sección 8.5.3.4 menciona lo siguiente:

> a. Todo edificio o parte de edificio ocupado o usado para fines comerciales, industriales, exhibición de artículos, hotel u hospital, será provisto de espacios para cargar y descargar con las dimensiones establecidas en el código de construcción vigente.
>
> b. Todo edificio o estructura utilizada para el procesamiento, empaque o venta de productos agropecuarios producidos en una finca será provisto de un espacio para cargar y descargar del tamaño requerido en el Código de Construcción vigente.
>
> c. Para casa de apartamentos será provisto de un (1) espacio por cada ochenta (80) unidades de vivienda o fracción de la misma.
>
> d. El espacio para cargar y descargar se localizará en la parte lateral o posterior del edificio y se limitará su visibilidad desde la acera. Reglamento Conjunto, Sección 8.5.3.4.

De otra parte, la Sección 6 del Reglamento de Calificación Especial del Condado, *supra*, dispone que la Junta de Planificación o la OGPe del Municipio de San Juan, podrá autorizar variaciones o concesiones en casos donde, debido a circunstancias excepcionales o extraordinarias, una aplicación literal de los mismos resultase en la prohibición o restricción irrazonable del disfrute de una pertenencia o propiedad, y donde se demuestre a su satisfacción que la variación (concesión) aliviará un perjuicio claramente demostrable, o que la misma habrá de redundar en los mejores intereses de la comunidad y el sector. Secc. 6.01 del Reglamento de Calificación Especial del Condado.

Además, la Sección 6.03 del Reglamento de Calificación Especial del Condado, *supra*, establece:

> La Junta de Planificación, la Oficina de Gerencia de Permisos (OGPe) o la Oficina de Permisos del Municipio de San Juan celebrará vistas públicas en estos casos de modo que las partes interesadas tengan la oportunidad de expresarse, y que la Junta de Planificación o la Oficina de Gerencia de Permisos pueda hacer

las determinaciones de hechos y conclusiones de derecho descansando en la prueba aportada en la vista que justifique su determinación.

Sin embargo, no se autorizará una variación, en todo o en parte, salvo que exista suficiente información para establecer:

- Que circunstancias excepcionales o extraordinarias, tales como la forma irregular del solar u otras circunstancias impiden el disfrute o la utilización de la propiedad.

- Que debido a circunstancias excepcionales o extraordinarias la aplicación literal de ciertos requisitos específicos de este reglamento resultaría en una dificultad práctica o en un perjuicio innecesario no creado o atribuible al dueño de la propiedad.

- Que la variación (concesión) es necesaria para la preservación y el disfrute de un derecho de propiedad y se demuestre que la variación (concesión) aliviará un perjuicio claramente demostrable, cuyo derecho es poseído y disfrutado por otras pertenencias en el mismo distrito, el cual no afecta el bienestar público.

- Que si en la variación (concesión) se solicitara la autorización de un uso no permitido en el distrito de calificación, el uso solicitado sea compatible con el carácter esencial del distrito.

- Que la variación (concesión) ha de redundar en los mejores intereses de la comunidad, municipio, o del pueblo de Puerto Rico.

- Que la autorización de tal variación (concesión) no afectará adversamente el disfrute y valor de las pertenencias cercanas en su uso presente y para cualquier otro futuro permitido.

- Que la autorización de tal variación (concesión) no encarecerá ni afectará adversamente la idoneidad, la seguridad y el funcionamiento conveniente de las facilidades públicas existentes o planeadas, incluyendo vías, escuelas, disposición de desperdicios y otros servicios esenciales.

- Que la variación (concesión) solicitada está en armonía con los propósitos generales de este reglamento.

- Que la autorización de tal variación (concesión) es consistente con el Plan de Uso de Terrenos, el Plan de Desarrollo Integral de Puerto Rico, el Programa de Inversiones de Cuatro Años y con la conservación y preservación de recursos naturales e históricos.

- Que el peticionario, a su vez, está en disposición de aceptar las condiciones y requerimientos adicionales a los requisitos reglamentarios que la Junta o la Oficina de Gerencia de Permisos (OGPe) le imponga para beneficio del interés público.

De acuerdo a esto último, la agencia podrá especificar la naturaleza y extensión de la concesión y prescribir aquellas condiciones que, a su juicio, sean necesarias para asegurar el cumplimiento de los criterios antes señalados. *Íd*., Secc. 6.05.

**-E-**

Por otra parte, el Reglamento Núm. 8858, conocido como el *Reglamento para el Proceso de Evaluación Ambiental* del 23 de noviembre de 2016 (Reglamento Núm. 8858), fue promulgado por la autoridad conferida a la Junta de Calidad Ambiental mediante la Ley Núm. 416-2004, según enmendada, conocida como *Ley Sobre Política Pública Ambiental*, y la Ley Núm. 161-2009, *supra*. *Íd*., Regla 101A. Dicho Reglamento tiene el propósito de cumplir con la política pública ambiental de una mayor fiscalización en el cumplimiento de las leyes y reglamentos ambientales mediante el establecimiento de un procedimiento ágil de planificación ambiental en el cual se evalúe y analice toda la información necesaria para asegurar que se tomen en cuenta todos los factores e impactos ambientales en las decisiones que pudieran afectar el ambiente. *Íd*., Regla 102 A.

Relativo al caso que nos ocupa la, la Regla 139(B) del precitado Reglamento dispone:

[…]

B. Las variaciones que no sean sustanciales en el concepto original de un proyecto, no requerirán de ningún trámite adicional como parte del proceso de planificación ambiental. No obstante, dichas variaciones deberán estar documentadas en el expediente del documento ambiental que obra en la OGPe, mediante la solicitud de una pre-consulta ante la dicha agencia.

[…]

**-F-**

La Sección 16.00 del Reglamento de Ordenación Territorial, *supra*, dispone que: "[t]oda variación deberá ser solicitada por el dueño de la propiedad para la cual se solicita la misma, o su representante autorizado, utilizando el formulario que se designe para tales propósitos señalando motivos, fundamentos y razones en apoyo a su solicitud." Secc. 16.01 (a) y (e) del Reglamento de Ordenación Territorial, *supra*. Igual disposición contiene la Sección 6.02 del Reglamento de Calificación Especial del Condado, *supra*, "[t]oda variación (concesión) deberá ser solicitada por el dueño o un representante autorizado del dueño de la propiedad para la cual solicita la misma. No se considerará o hará variación (concesión) alguna en exceso de la solicitada." *Íd*.

En lo pertinente, la Sección 2.1.9.1 del Reglamento Conjunto de 2023, dispone que "[t]oda solicitud de recomendaciones, consultas, licencias, autorizaciones, certificaciones o permisos relacionado al desarrollo y uso de terrenos en Puerto Rico, podrá ser promovida por el dueño, optante o arrendatario de la propiedad debidamente autorizado, por sí o a través de su representante autorizado […]."

Sobre la legitimación activa del solicitante la Sección 2.1.9.5 del Reglamento Conjunto, establece lo siguiente:

a. Toda solicitud relacionada al desarrollo y uso de terrenos en Puerto Rico, cualquier otra autorización o tramite definido en este Reglamento, será promovido por el dueño, optante o arrendatario de la propiedad con autorización, por sí o a través de su representante autorizado […].

b. Tendrá que incluirse evidencia fehaciente que establezca legitimación activa de que el proponente es dueño, o es optante o arrendatario debidamente autorizado por el legítimo dueño de la propiedad, mediante copia simple de uno o más de estos documentos:

 1. Escritura pública
 2. Contrato de arrendamiento
 3. Contrato de opción de compra
 4. Certificación registral
 5. Declaración de herederos
 6. Transacción de Terrenos debidamente aprobada por la JP
 7. De ser una persona jurídica, se presentará documentación que acredite su existencia y autorización para hacer negocios en Puerto Rico o Estado Unidos.

c. Cuando se trate de más de un propietario, se someterá evidencia de que todos autorizan la acción propuesta ante la OGPe o Municipio Autónomo con Jerarquía I a la III, que se ha delegado dicho derecho a una sola persona.

d. Cuando se trate de una propiedad o terreno público, el solicitante deberá establecer su legitimación activa mediante autorización expresa de la instrumentalidad publica que le autoriza a solicitar el permiso o consulta.

e. Cuando se tarte de mejoras públicas en terrenos de una propiedad privada, el proponente someterá evidencia de que notificó al titular del predio.

f. Cuando la solicitud de servicio sea presentada por un profesional licenciado, éste deberá incluir la evidencia donde demuestre que el profesional es licenciado y colegiado en Puerto Rico.

**III.**

En el caso de autos, los recurrentes presentaron cinco (5) señalamientos de error. En esencia, alegan que erró la Oficina de Permisos del Municipio de San

Juan al aprobar las variaciones presentadas por los recurridos en cuanto al uso comercial y turístico para un hotel en zona residencial; al no cumplir con la cantidad de estacionamientos requeridos; no tomar en consideración los perjuicios a los residentes y propietarios; no cumplir con la aprobación de un documento ambiental; y el alegado proponte del proyecto no tener legitimación activa.

## A.

Procederemos a discutir el primer y segundo señalamiento de error de manera conjunta.

En el primer señalamiento de error, la parte recurrente sostiene que los recurridos no lograron establecer las circunstancias extraordinarias que justificaran convertir y destinar un edificio de apartamentos residenciales a un "hotel, restaurante y barra", en zona residencial. Alegan que, el uso propuesto no está permitido en el distrito residencial, puesto que, afectará el uso y disfrute de los propietarios residentes del área. A su vez, que el comportamiento mixto residencial y comercial-turístico, no son razón suficiente para aprobar una variación en uso.

Mientras que, en el segundo señalamiento de error, plantean que el Municipio aprobó la variación en uso sobre estacionamientos, sin que quedara formalizado mediante gravamen o servidumbre. Además, alegan que el espacio propuesto no cumple con la capacidad requerida, y que se encuentra a una distancia mayor a la exigida en el Reglamento. Por ello, sostienen que la *Resolución* recurrida fue arbitraria e irrazonable.

En el presente caso, nuestro Tribunal Supremo ha definido las variaciones como "una válvula de escape dentro del rígido ordenamiento de zonificación vigente en nuestra jurisdicción." *Empresas Ferrer v. ARPe*, 172 DPR 254, 266 (2007); *Asoc. Res. Park Side, Inc. v. JP*, 139 DPR 349, 354 (1995). Las variaciones flexibilizan el rigor reglamentario, permitiendo aliviar restricciones que regulan el disfrute de determinada propiedad cuando se demuestra que, debido a circunstancias especiales, la aplicación de la reglamentación vigente es irrazonable y ocasiona perjuicios a su propietario. *Íd*. Así, se evita que una reglamentación existente se convierta en un instrumento inflexible e incapaz de amoldarse a situaciones extraordinarias. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 82 (1999). Dado su carácter excepcional, las variaciones, sólo deben concederse en situaciones realmente extraordinarias, cuando están claramente justificadas y procedan conforme a las leyes y reglamentos aplicables. *Empresas Ferrer v. ARPe*, supra, pág. 267.

De otra parte, en el Reglamento de Calificación Especial del Condado, *supra*, el área donde está ubicada la propiedad en controversia es considerada como una zona exclusiva para el uso residencial. En dicha zona, solamente se permiten los servicios de hospedería para casa de huéspedes, alojamiento y desayuno, y alojamiento suplementario por corto periodo, pero no los hoteles. No obstante, el Municipio tiene la facultad de determinar si el uso propuesto en la solicitud cumple con los requisitos estatutarios y reglamentarios aplicables, para su variación.

Así las cosas, el Municipio luego de evaluar la solicitud de uso, haber celebrado las vistas públicas necesarias y escuchar a las partes interesadas, emitió una *Resolución*, mediante la cual aprobó las variaciones solicitadas, entre ellas, el "uso – hotel con restaurante y barra" en zona residencial y "estacionamientos vía excepción", en otro predio del proyecto.

Al examinar la *Resolución* recurrida, se evidencia que el Municipio consignó que la parte recurrida justificó su solicitud en base a los criterios establecidos en el Reglamento de Calificación Especial del Condado y el Reglamento Conjunto. Expuso el razonamiento utilizado para evaluar la concesión de las variaciones según son exigidas en los reglamentos aplicables.

El Municipio ofreció determinaciones en apoyo de que las variaciones concedidas estaban en armonía con los propósitos que dispone el Reglamento de Calificación Especial del Condado y el Reglamento Conjunto. Entre ellas que, las variaciones solicitadas eran razonables, al no afectar a la comunidad, ni la infraestructura del sector. A su vez que, la zona es una mixta residencial y comercial-turístico, por lo que, el uso propuesto es cónsono con los distritos colindantes y usos actuales de la zona. De igual forma, determinó que la estructura en controversia lleva sobre quince (15) años desocupada, por ende, rehabilitarla brindaría un mejor valor a las propiedades cercanas.

En cuanto a la determinación sobre el espacio de los estacionamientos, el Municipio la consideró y entendió que la misma podía ser atendida en la forma

propuesta por la parte recurrida. La propiedad cuenta con dieciséis (16) espacios, y mediante arrendamiento con Valera Parking, proveerán cuarenta (40) espacios adicionales, ubicados a menos de 200 metros del proyecto. Es por ello que, al revisar la *Resolución* y según consta del expediente, se permite concluir que las variaciones sobre los requisitos de los estacionamientos fueron concedidas dentro del ámbito de discreción de la entidad municipal. Esto, en consonancia con la política pública de facilitar el desarrollo del área del Condado. De igual forma, razonamos en cuanto al requisito de la formalización de un gravamen, fianza o carta de crédito sobre el predio que provee el estacionamiento cuando medie cualquier arreglo para proveer estacionamiento fuera de los límites de la propiedad.

No obstante, el Municipio concluyó que la parte recurrida debía cumplir con ciertos requerimientos y recomendaciones para continuar la operación del hotel. En esencia, indicó, que debían cumplir con la provisión de los estacionamientos en el predio #70 de la Ave. Condado y que, de perder la vigencia del contrato, debían proveer otro lugar para la provisión de los espacios requeridos. Por lo que, de no cumplir la autorización puede ser revocada.

Así las cosas, determinamos que el Municipio ejerció correctamente su discreción al aprobar y autorizar el uso y demás variaciones solicitadas.

**B.**

En su tercer señalamiento de error, en esencia, los recurrentes plantean que el Municipio actuó arbitrariamente al no reconocer los perjuicios que el

proyecto les provocaría sobre el uso y disfrute de sus propiedades y los impactos en la comunidad residencial.

No obstante, según surge del expediente, el Municipio cumplió con escuchar a las partes en las vistas públicas celebradas, consideró las posiciones de las partes respecto al proyecto en controversia y emitió una decisión basada en la evidencia presentada. Por ello, luego de evaluar todos los planteamientos, aprobó el uso y variaciones presentadas por los recurridos. Por lo tanto, el error no fue cometido.

## C.

En cuanto al cuarto señalamiento de error, los recurrentes sostienen que incidió el Municipio al aprobar la consulta de ubicación sin la aprobación previa de un documento ambiental. Arguyen que, la acción propuesta no es una remodelación, sino "una propuesta para aprobar un uso intenso y no permitido en el distrito residencial; es una transformación" de apartamentos a un hotel. Por ello, plantean que los recurridos debieron presentar un documento ambiental y no una certificación por exclusión categórica.

Conforme surge del expediente, el 28 de agosto de 2024, la OGPe emitió una *Certificación de Cumplimiento por Exclusión Categórica* para la solicitud del proyecto. La *Certificación* estableció que era de aplicación la exclusión categórica número 13 de la OA-2021-021. La cual dispone:

> II. Listado de Acciones: Las siguientes acciones podrán ser solicitadas como Exclusión Categórica, […].
>
> […]
>
> D) Acciones de demolición o reconstrucción, remodelación y/o ampliación:

12. Demolición de estructuras y obras de infraestructura;

13. Remodelaciones y reconstrucciones de estructuras existente.

14. Ampliaciones menores de estructuras existentes que se mantienen dentro de la huella del predio para operaciones cuyos usos estén debidamente autorizados por la calificación o mediante un permiso de uso o consulta de ubicación.

El proyecto que proponen los recurridos, consiste en la "remodelación de una estructura de cinco (5) plantas que se propone sea rehabilitada para uso de un pequeño hotel de sesenta y cuatro (64) habitaciones sencillas, restaurante, área de piscina, cuartos de lavado y mantenimiento, baños y estacionamientos para uso de los huéspedes."

Consecuentemente, la OGPe expresó haber evaluado el documento ambiental, por lo que, emitió la *Certificación* bajo la exclusión categórica número 13. Así las cosas, los recurridos cumplieron con la fase de evaluación de un posible impacto ambiental. Por lo que, resolvemos que el error señalado no fue cometido.

**D.**

Finalmente, la parte recurrente sostiene que la parte proponente del proyecto no tiene legitimación activa para solicitar las variaciones ante el Municipio. Alegan que el Municipio incidió al autorizar tal solicitud, toda vez que los recurridos no son los dueños de la propiedad.

En el presente caso, la Corporación Cranes LLC, a través de su Presidente, el Sr. César Candia Gatassol, suscribió un contrato de opción a compra con la entidad

dueña del predio objeto de la consulta. El documento titulado "*Purchase Sale Agreement*", acredita que el proyecto "*Luisa Condado Project*" en el sector del Condado, será radicado a nombre de Luisa 57 LLC, quien estaría a cargo de firmar cualquier documento necesario para completar el proceso.

Así las cosas, del expediente se desprende que los trámites realizados por la representante del proyecto fueron realizados en beneficio de "*Luisa Condado Project*".

Por lo tanto, no nos persuade la contención de la parte recurrente, en cuanto a que el Municipio aprobó las variaciones a un proponente sin legitimación activa. Con la evidencia presentada, quedó demostrada la legitimación activa de Luisa 57 LLC para realizar el trámite que impugnan los recurrentes. En virtud de lo antes expuesto, resolvemos que no se cometió el error señalado.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones